## HOLLISTER *v.* KINYON'S ESTATE.

1. TRIAL—INSTRUCTIONS— EXPRESS CONTRACT — SERVICES — EXTRA SERVICES—CLAIM AGAINST ESTATE.

   Where claimant brought suit against an estate for services rendered the deceased, and the defense was an express contract with claimant to live in the home receiving his board and lodging for such services as he might render, an instruction by the court allowing the jury to disregard the express contract and determine what the services he performed were really worth was erroneous, in the absence of any evidence that deceased regarded the services as of more value at one time than another, and where the general character of the services did not change.

2. WORK AND LABOR—CONTRACTS — EXPRESS CONTRACTS — IMPLIED CONTRACTS—SERVICES.

   Where an express contract covers the terms of an employment, there is no room for implications which change or defeat those terms.

3. SAME—CONTRACTS—TRIAL—EVIDENCE.

   Where testimony as to an express contract for services was uncontradicted and was corroborated by a course of dealing for 20 years, a finding that such contract was not made should be set aside as against the weight of evidence.

4. LIMITATION OF ACTIONS — ESTATES OF DECEDENTS — CLAIMS — PLEADING.

   The statute of limitations was a ground of defense which might have been pleaded in the court below against a claim for services against an estate extending over a period of 20 years.

5. APPEAL AND ERROR—LIMITATION OF ACTIONS—PLEADING.

   While commissioners on claims cannot waive the operation of the statute of limitations (3 Comp. Laws 1915, § 13872), yet where the defense is not raised in the circuit court, on appeal, it cannot be raised in this court.

Error to Eaton; Clement Smith, J.  Submitted January 10, 1917.  (Docket No. 72.)  Decided March 29, 1917.

Stephen Hollister presented his claim for services rendered against the estate of John Kinyon, deceased. From a disallowance of the claim, claimant appealed to the circuit court. Judgment for claimant. Defendant brings error. Reversed.

*Rosslyn L. Sowers* and *L. H. McCall*, for appellant.

*Raymond A. Latting* and *Horace S. Maynard*, for appellee.

Appellee presented a claim against the estate of John Kinyon, deceased. The items thereof he specified as follows:

Estate of John Kinyon, Deceased, to Stephen Hollister,
Dr.

| | | |
|---|--:|--:|
| 1904, December. To cash paid William Munson for wringer | $5 | 00 |
| 1907, July. To drilling well in Grand Ledge, 140 feet (net) | 80 | 00 |
| 1908, May. Cistern pump and 8 feet galvanized pipe at farm | 2 | 05 |
| 1909, June. To well pump for farm | 6 | 00 |
| 1912, July. To cash paid C. A. Smith for groceries | 25 | 00 |
| 1913, June. To pump head, 8 ft. of pipe rod.. | 6 | 50 |
| To cash paid W. R. Pierce, labor | 1 | 00 |
| To labor | 1 | 00 |
| To getting gas engine from Lansing, returning it to Lansing for starting, setting engine, etc. | 10 | 00 |
| November, 15 feet of pipe and 2 elbows | 1 | 80 |
| 1914, April. To repairs on engine at farm.... | 2 | 85 |
| August. To personal attendance from John Kinyon, 1,056 weeks from April 1, 1894, to July 31, 1914, at $3.50... | 3,696 | 00 |
| | $3,837 | 20 |

The commissioners on claims disallowed it. Upon appeal to the circuit court, where all items of the demand excepting the last one were withdrawn, a jury awarded him $2,000, and a judgment for this amount,

and costs, was entered.  A motion for a new trial was refused.

Testimony for the claimant tended to prove that in March, 1894, the deceased was kicked by a horse and was thereafter totally blind.  He lived on a farm of more than 100 acres, and had some live stock there. A man who was then upon the farm continued to work for deceased until November, 1894.  At that time— November, 1894—claimant went to live in the home and family of deceased, and thereafter was furnished room, board, and washing and did some of the chores. Early in 1895, the deceased moved from his farm to the city of Grand Ledge, three or four miles distant from the farm, renting the farm, disposing of his live stock, excepting a cow and one horse, and continued to live in Grand Ledge until he died, in July, 1914. Mrs. Kinyon, his wife, died in April, 1914.  During this period, claimant, in the city as on the farm, lived in the family.  He had some business of his own, how much is not very certain, and followed it at intervals.  In Grand Ledge, as on the farm, claimant rendered services to deceased and his wife, being a sort of handy man who cared for the lawn, did errands, and often accompanied Mr. Kinyon when he went abroad.  It is the theory of the claimant that he rendered personal services, valuable to and accepted by the deceased, under circumstances implying that compensation was expected and was expected to be paid, and that the value of those services, over and above board and room and washing, was 50 cents per day.  Primarily, the claimant seeks to recover upon an implication of a promise to pay for services what the services were reasonably worth.  There is no evidence that any account of these services was kept by any one, no evidence of any payments of money by deceased to claimant, no evidence of any demand by claimant for compensation.

It is the theory of the representative of the estate that these services were performed agreeably with the terms of an express contract, according to which claimant was to live with the deceased, be housed, boarded, and have his washing done, and do the chores and be errand boy, etc. Testimony tending to prove the existence of such an arrangement was introduced and, if believed, fairly established the fact. Claimant, not conceding that the existence of an express contract is proven, but denying there was such a contract, answers by saying, if the contract alleged was made, that after the family removed from the farm to the city the necessity for greater service existed, and that the service rendered by claimant was more onerous and more valuable to the deceased than that theretofore rendered. Consequently, it is said, the implication arises that the services were to be paid for by an additional sum, or some sum, beyond board, etc.

The appellant, the estate, says that in developing these theories at the trial errors of law were made, insisting that the court should have ruled that the express contract relied upon was established, and, if this is not so, still that improper testimony was admitted and the jury wrongly advised in the charge of the court. It is urged, also, that the greater part of the alleged demand is barred by the statute of limitations, a point not made in the trial court. Finally, it is insisted that a new trial should have been ordered for various reasons asserted when the motion therefor was made, among them the one that the verdict is against the great weight of evidence.

Claimant was a witness in his own behalf and, over objection, gave testimony. The court instructed the jury that if claimant and deceased had an agreement according to which claimant's services were rendered, and if it continued during the time claimant was at Kinyon's, a verdict for the estate must be returned;

that, if claimant went to Kinyon's under an agreement, then he must show a different arrangement afterwards before he could recover, and, unless satisfied that a different arrangement was made, should return a verdict for the estate. But the court then qualified the instruction, saying:

"Should you find that this was the arrangement when he went there, and his duties and labors did not change, then the instruction I have given you is correct; but should you be satisfied from the proof that his duties and labors changed and became greater, and that they were done and received by Mr. Kinyon with the expectation that they were of more value than before and of more value than the board and lodging, if you shall find they were of more value than the board and lodging, then he can recover what in your judgment they are reasonably worth, not more, however, than the amount he has claimed in this action, that is, 50 cents a day."

In stating the claims of the parties, the court said:

"The claim in this matter is for services which it is alleged Stephen Hollister performed for John Kinyon in his lifetime. There has been no express contract specifically established in the case, but it is alleged that the claimant for a good many years acted as the servant, or, as has been termed in the case, the 'handy man' for the deceased, etc."

OSTRANDER, J. (*after stating the facts*). The case for the claimant as it was made is, in essentials, not unlike the one stated in *Covel* v. *Turner*, 74 Mich. 408 (41 N. W. 1091). It does not appear that claimant, a man more than 70 years old when this case was tried, had a home or family of his own. He attached himself, by permission or by invitation, to the family of the deceased in 1894, and, whatever the relations were, they continued until 1914—more than 20 years. During that period claimant performed services for the deceased, and during that period he lived in his family, receiving board, lodging, and washing. From

time to time, at least, claimant followed his business of driving wells. He. was not always at the Kinyon place. No bargain was made, and he asked for no pay other than his board, etc. There was no promise to pay him. After the death of Mr. Kinyon, claimant presented an account of more than $3,800 against his estate, about $3,700 of it for his unrequited services. As to his services, he seeks a recovery upon the ground that they were worth more than Kinyon paid for them. No account was kept of them; no mutual account of the parties is exhibited. Impliedly, claimant says, impliedly Kinyon agreed to pay him for his services what they were reasonably worth. He paid him only a part, and has owed him all of the time at least 50 cents a day more than he paid him for each day that he served him.

A jury has given him $2,000, not the amount he claimed, not the result of the application of any discoverable theory. It is obvious that improper advice was given to the jury which may have resulted in prejudice to the estate.

The case for plaintiff was met by the assertion and proof that, when claimant began to serve the deceased, an express agreement for his services was made, by the terms of which he was to receive only his board, etc., as payment. Reading all of the charge, I am convinced that the court did not intend to say to the jury, in stating the claims of the parties, that the contract relied upon by the estate was not established —did not then refer to that alleged contract, although literally that was the statement, no other contract having been asserted. Other and later portions of the charge act, I think, as a correction of this statement and indicate that the court was referring to the claim made and theory of the claimant. Assuming, although the testimony concerning this agreement was undisputed, and was fairly corroborated by the

course of events, that whether it was made was a question for the jury, it is impossible to determine how the question was answered, or whether the jury agreed to answer it one way or the other. Because they were instructed, in effect, that if it was made and claimant after a while performed more considerable services, or services of more value, than at first, they might disregard the alleged express agreement and determine what the services he performed were really worth. This is the effect of the instruction, because there is no evidence tending to prove that Kinyon regarded the services as of more value at one time than at another. The right of the estate was made to rest, finally, upon whether the jury found:

"That his duties and labors changed and became greater, and that they were done and received by Mr. Kinyon with the expectation that they were of more value than before and of more value than the board and lodging, if you shall find they were of more value than the board and lodging, then he can recover, etc."

The general character of claimant's services did not change. He was, in fact, paid for all the time in accordance with the alleged agreement. When an express contract covers the terms of an employment, there is no room for implications which change, or defeat, those terms. *Schurr* v. *Savigny*, 85 Mich. 144 (48 N. W. 547). For a case in which the rule does not apply, see *Middlebrook* v. *Slocum*, 152 Mich. 286 (116 N. W. 422). There is no testimony tending to prove that either party to the alleged agreement ever agreed upon a modification of its terms, or that a new or further agreement was made. There is no evidence tending to prove that claimant ever considered a modification of the alleged agreement. It is said that the alleged express agreement was for no specified period of service beyond the first winter that claimant lived with Kinyon. Granting this, there is, as I have said,

no evidence of any change in the general character of the relations established by the agreement, if it was made. Claimant stayed on in the general capacity in which he began. It must be remembered that claimant is not pointing out particular days, or weeks, when he did particular work more or less than by the alleged contract he was to do. He gives no credit for days when he was employed about his own affairs. He asserts a continuous and general rendering of services from the beginning, stating the number of weeks of service as 1,056 and the value per week at $3.50, which is 50 cents a day. The qualification introduced into the charge of the court should have been omitted.

I am not prepared to hold that the evidence of the express contract required the court to instruct the jury that it was established, and therefore to direct a verdict for the estate. No witness contradicted the witness who testified to the agreement, and a course of dealing for 20 years corroborates his testimony. The testimony is, however, so conclusive that a finding that the agreement was not made ought to be set aside as against the weight of evidence.

The statute of limitations, while it could not, without a framing of issues, have been pleaded in the court below, was a ground of defense which the estate might have asserted in the trial court. *McGee* v. *McDonald's Estate,* 66 Mich. 628 (33 N. W. 737); *McHugh* v. *Dowd's Estate,* 86 Mich. 412 (49 N. W. 216); *Conger* v. *Hall,* 158 Mich. 447 (122 N. W. 1073). This is a court of errors, and while the statute, 3 Comp. Laws, § 9375 (3 Comp. Laws 1915, § 13872), and decisions of this court, are to the effect that commissioners on claims cannot waive the operation of the statute, it is also true that questions not opened in the trial court are not to be first presented in this court. The reasons for this rule, while not so obvious in this case

as in some which may be supposed, are nevertheless controlling here.

It is not necessary to consider whether the motion for a new trial ought to have been granted, since for the reasons stated the judgment must be reversed, and a new trial granted.

KUHN, C. J., and STONE, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.