HEIDER *v.* MICHIGAN SUGAR COMPANY.

DECISION OF THE COURT.

1. DEATH—TRAPPERS—MINORS—CONSIDERATION—GROSS NEGLIGENCE
OF LANDOWNER.

No recovery is allowed in actions under death act for loss of
2 minor sons of administrator, where they were drowned while
trapping on defendant's land without permission or consider-
ation and there is no claim defendant was guilty of gross
negligence or wilful and wanton misconduct in the maintenance
of chemical ponds for disposal of waste products incident
to sugar-beet processing operation (CL 1948, §§ 691.581–
691.583; PA 1953, No 201).

SEPARATE OPINION.
DETHMERS and KELLY, JJ.

2. NEGLIGENCE—POSSESSOR OF LAND—TRESPASSERS.

*A possessor of land who knows or from facts within his knowl-
edge should know, that trespassers consistently intrude upon
a limited area thereof, is subject to liability for bodily harm
there caused to them by his failure to carry on an activity
involving a risk of death or serious bodily harm with reason-
able care for their safety.*

3. SAME—DANGEROUS CONDITION OF PREMISES.

*Owners of private property are not responsible for injuries
caused by leaving a dangerous place thereon—but not immedi-*

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 8, 9, 13,16] 38 Am Jur, Negligence §§ 109–113, 118, 138.5.
  Liability of landowner for drowning of child.  8 ALR2d 1254.
[2, 12] 38 Am Jur, Negligence § 112.
[3] 38 Am Jur, Negligence § 109 *et seq.*
[4, 5, 15] 38 Am Jur, Negligence § 118.
[6, 7, 22, 23] 4 Am Jur 2d, Appeal and Error § 507.
  5 Am Jur 2d, Appeal and Error § 545.
[10] 14 Am Jur, Courts § 191.
[11] 14 Am Jur, Costs § 14.
[14] 38 Am Jur, Negligence § 4 *et seq.*
[17, 18] 16 Am Jur, Death § 238.
[19] 16 Am Jur, Death §§ 216, 217.
[20, 21] 16 Am Jur, Death § 199.
[24] 5 Am Jur 2d, Appeal and Error § 974.
[25] 5 Am Jur 2d, Appeal and Error § 1014.

*ately adjoining a highway—unguarded, where the person in-*
*jured was not on the premises by permission, or on business,*
*or other lawful occasion, and had no right to be there.*

4. SAME—REASONABLE FORESEEABILITY—TRESPASSERS—INFANTS.

*Reasonable foreseeability that children would be trapping, play-*
*ing, or trespassing upon premises occupied by a defendant*
*is a necessary prerequisite to imposition of liability for injuries*
*to, or death of, trespassing children.*

5. SAME—TRESPASSERS—INFANTS.

*Judgments for plaintiff administrator of the estates of his 12–1/2-*
*and 8-year-old sons who had drowned while trespassing on de-*
*fendant sugar company's 27.1-acre pond in center of 200-acre*
*tract of land in midafternoon in subzero weather where a*
*waste pipe prevented freezing* held, *against the clear preponder-*
*ance and contrary to the great weight of the evidence, where*
*record is devoid of evidence that defendant's employees had*
*ever seen children trespassing on its premises or had specific*
*knowledge that children trespassed thereon.*

6. APPEAL AND ERROR—QUESTIONS REVIEWABLE.

*Generally, parties cannot assume a position inconsistent with or*
*different from that taken at the trial and are restricted to*
*the theory upon which the case was defended in the court*
*below, but such rule is not inflexible and will not be applied*
*when consideration of a claim sought to be raised is necessary*
*to a proper determination of the case.*

7. SAME—QUESTIONS REVIEWABLE—STATUTES.

*A party's failure to call the trial court's attention to a relevant*
*statute does not preclude the appellate court from consid-*
*ering it.*

8. NEGLIGENCE—GROSS NEGLIGENCE—OCCUPIER OF PREMISES—EVI-
DENCE.

*Defendant occupier of premises was not liable for the death of*
*plaintiff administrator's decedents, his 12–1/2- and 8-year-old*
*sons, who had trespassed upon and had drowned in a 27.1-acre*
*pond located in center of its 200-acre tract of land and used,*
*in its business of processing sugar beets, for disposal of waste*
*materials, where there is no evidence that the boys had paid*
*a valuable consideration for trapping on defendant's land*
*and no evidence that defendant had been guilty of gross*
*negligence or wilful and wanton misconduct, notwithstanding*
*trial court's attention was not drawn to statute requiring*
*payment of a valuable consideration for privilege of hunting,*
*fishing, or trapping or that the occupier of premises be guilty*

*of gross negligence or wilful and wanton misconduct toward persons on its premises before liability for their injuries while thereon could be imposed (PA 1953, No 201).*

SEPARATE OPINION.

BLACK, SMITH, and O'HARA, JJ.

9. DEATH—TRESPASSING CHILDREN—TRAPPERS—LANDOWNER'S LIABILITY—JURISDICTION.

*The trial court had no jurisdiction to try actions brought under death act for loss of plaintiff's 2 minor sons who went onto defendant sugar company's premises to trap muskrats and walked onto one of its chemical ponds, where it knew persons came to trap but failed to have any warning signs or to protect children, in view of statute limiting liability of landowner to persons on the land without payment of a valuable consideration unless the injuries be caused by gross negligence or wilful and wanton misconduct of the owner, since the declared acts of the defendant would not, if death had not ensued, have entitled the sons to have maintained an action (CL 1948, § 691.581; PA 1953, No 201).*

10. COURTS—LACK OF JURISDICTION.

*Courts are bound to take notice of the limits of their authority, and a court may, and should, on its own motion, though the question is not raised by the pleadings or by counsel, recognize its lack of jurisdiction and act accordingly by staying proceedings, dismissing the action, or otherwise disposing thereof, at any stage of the proceeding.*

11. COSTS—JURISDICTION—FAILURE TO RAISE DECISIVE QUESTION IN DUE TIME.

*A defendant who failed to raise decisive jurisdictional question in due time should not have costs.*

DISSENTING OPINION.

T. M. KAVANAGH, C. J., and SOURIS and ADAMS, JJ.

12. DEATH—TRESPASSERS—KNOWLEDGE OF OWNER.

*Findings of trial court and jury that defendant sugar company's employees knew that its 200-acre premises had been frequented by trappers, hunters, skaters, and other trespassers held, amply supported by evidence adduced in administrator's actions under death act for loss of his 12-1/2-year-old and 8-year-old sons (CL 1948, § 691.581 et seq.).*

13. NEGLIGENCE—CARE REQUIRED OF OWNER OF PREMISES.
   *The requirement that an owner of premises shall use reasonable care for the safety of trespassers is not limited to only where there is an awareness of child trespassers entering his property and subjecting themselves to danger and possible harm.*

14. SAME—MINIMIZATION OF LIKELIHOOD OF HARM TO OTHERS.
   *There is a duty upon all men so to conduct their activities as to minimize the likelihood of harm to others.*

15. SAME—CHILD TRESPASSERS—DANGEROUS CONDITION OF PREMISES.
   *Likelihood of injury to child trespassers from dangerous condition of defendant's premises and foreseeability of such injury are much the same thing.*

16. SAME—DANGEROUS CONDITION OF PREMISES—CHILD TRESPASSERS.
   *Findings of jury in response to special questions that defendant sugar company knew, or should have known, that child trespassers were likely to come upon its premises, that the premises constituted an unreasonable risk of death to child trespassers, that the utility of maintaining the pond in the condition it was, was slight as compared to the risk to child trespassers held, proper in actions by administrator for death by drowning in mid-December of his 2 sons, 12-1/2- and 8-years of age, near middle of 27.1-acre pond where water from sugar beet processing was discharged in such a way as to keep 8' x 10' area from freezing.*

17. DEATH—DAMAGES—PERSONS ENTITLED TO SHARE IN RECOVERY.
   *Whether awards of $40,989.65 for loss of 12-1/2-year-old boy and $125,000 for loss of 8-year-old boy in actions under the death act were excessive or insufficient is dependent upon whom the persons were who would share in the recovery (CL 1948, § 691.581 et seq.).*

18. SAME—DAMAGES—NEXT OF KIN.
   *Trial court's restriction of recovery in nonjury action under the death act for loss of 12-1/2-year-old son of administrator to the boy's father held, error, where there were other members of the class of next of kin entitled to recovery and who should have been considered, necessitating remand for reconsideration of such award (CL 1948, § 691.581 et seq.).*

19. SAME—DAMAGES—NEXT OF KIN—COST OF RAISING CHILD.
   *Award of $10,989.65 to father in his action under death act for cost of raising his 12-1/2-year-old son held, incorrect, where grandfather, not the father, had incurred such cost and was among the next of kin entitled to recover (CL 1948, § 691.581 et seq.).*

20. Same—Damages—Loss of Companionship—Allocation to Next of Kin.

> *Award of $30,000 to father for loss of society and companionship of 12–1/2-year-old boy who was drowned in defendant's pond is questioned, where the father has contributed nothing toward the support of the son, was in prison at time of drowning, later released on special parole after contracting cancer, and at time of trial had an expectancy of 2 to 5 years, and trial court admonished to measure the damages carefully and make proper allocation to members of the statutory class of next of kin (CL 1948, § 691.581 et seq.).*

21. Same—Damages—Loss of Companionship—Dependency.

> *Verdict of $125,000 under death act for loss of companionship of 8-year-old boy who had a younger brother and sister and whose parents had separated held, not excessive, in view of the mother's probable dependency upon such son, and the loss to the family group of the life of the boy over a useful lifetime (CL 1948, § 691.581 et seq.).*

22. Negligence—Statutes—Limitation of Liability—Questions Reviewable.

> *Statute limiting liability of owner of premises to persons injured thereon while fishing, hunting, or trapping, with or without permission, but without payment of a valuable consideration, to injuries caused by the gross negligence or wilful and wanton misconduct of the owner, which was not brought to the attention of the trial court and sought, for the first time, to be applied on appeal in the Supreme Court as an afterthought, held, not applicable in case otherwise affirmed, since it is not the function of the Supreme Court to correct, on review, the inadvertence or failure of counsel to present what might have been a defense (CLS 1961, § 300.201).*

23. Appeal and Error—Questions Raised for First Time on Appeal—Exceptions.

> *Exception to rule that no matter should be heard on appeal, where first raised there, should only be made when the matter was presented to the trial judge and he refused to rule, or, under the clearest circumstances, where the entire matter is before the Supreme Court.*

24. Negligence—Death—Statutes—Limitation of Liability—Remand.

> *Whether or not statute limiting liability of owner of premises to persons injured thereon while fishing, hunting, or trapping, with or without permission, but without payment of a valu-*

*able consideration, to injuries caused by the gross negligence or wilful and wanton misconduct of the owner, is to be applied in action under death act for loss of 12–1/2-year-old boy, and whether such statute is invalid for a variety of reasons advanced are questions determinable by trial court on remand for possible reassessment of damages (CLS 1961, § 300.201).*

25. COSTS—EACH PARTY PREVAILING IN PART.
    *No costs are allowed in appeal in action that is remanded for determination of questions not hitherto raised before case was presented on appeal and for reassessment of damages, since each party has prevailed in part.*

Appeal from Saginaw; Huff (Eugene Snow), J. Submitted January 9, 1964. (Calendar Nos. 6, 7, Docket Nos. 49,890, 49,891.) Decided May 10, 1965. Rehearing denied October 4, 1965. Certiorari granted by Supreme Court of the United States February 21, 1966.

Case by Donald Heider, administrator of the estate of James D. Heider, deceased, against Michigan Sugar Company, a Michigan corporation, under death act for negligence resulting in drowning. Similar action by plaintiff as administrator of the estate of David Heider. Cases consolidated for trial and on appeal. Verdict for plaintiff in 1 case based on death of David Heider, and judgments for plaintiff in both cases. Defendant appeals. Plaintiff cross-appeals on question of damages and propriety of computing interest. Reversed and remanded for entry of judgments for defendant.

*Gregory M. Pillon,* for plaintiff.

*Smith, Brooker & Harvey (Carl H. Smith, Sr.,* of counsel), for defendant.

*Amicus Curiae: Cicinelli, Mossner, Majoros & Harrigan (Peter F. Cicinelli* and *Eugene D. Mossner,*

of counsel), as to allowance of prejudgment interest in death cases.

KELLY, J. Plaintiff brings these companion cases under the death by wrongful act statute (CL 1948, § 691.581 [Stat Ann 1959 Cum Supp § 27.711]), claiming that his sons James (12-1/2 years of age) and David (8 years of age) were drowned in a pond on defendant's premises and that their deaths were caused by defendant's negligence.

Plaintiff demanded a jury only in the David Heider case, and defendant's request for jury trial in the James Heider case was denied. The cases were consolidated for trial, one a jury case and the other a nonjury case.

At the conclusion of plaintiff's proofs, defendant moved for a directed verdict "for the reason that the plaintiffs have failed to produce evidence * * * that would tend to establish any responsibility on the defendant for the death of the children." The court took the motion under advisement and reserved decision in accordance with the terms of the Empson act.[1]

February 15, 1961, the jury returned a verdict in favor of the plaintiff-administrator of the David Heider estate in the sum of $125,000.

February 28, 1961, defendant filed its motions for new trial and for judgment notwithstanding verdict, on the grounds that the verdict was against the clear preponderance of the evidence, contrary to the great weight of the evidence, and clearly excessive.

May 17, 1962, the trial court directed the entry of a judgment in the nonjury case of James Heider in the amount of $40,989.65, and on the same date denied defendant's February 28, 1961, motions for new trial and judgment notwithstanding verdict in

---

[1] CL 1948, § 691.691 *et seq.* (Stat Ann and Stat Ann 1959 Cum Supp § 27.1461 *et seq.*).—REPORTER.

the David Heider case, said motions having been under consideration by the court during the time he was deliberating on the James Heider nonjury case. Defendant then moved for new trial in the nonjury case and this also was denied, the court relying on its opinion denying the motions in the David Heider case.

Question No. 1: *Was the verdict and judgment in each case against the clear preponderance of the evidence and contrary to the great weight of the evidence?*

James and David Heider were half-brothers and did not live together. James was raised by and lived with his grandparents since he was 8 days old. His mother and father (plaintiff Donald Heider) were divorced and the father contributed nothing to James' support.

David, the younger, lived with his mother and younger brother and sister 3 blocks from the grandparents' home, in Sebewaing, Michigan.

The father, plaintiff Donald Heider, was in Jackson prison serving a sentence of from 10 to 20 years on an armed robbery conviction at the time of the accident.

Defendant's 200-acre tract of land is located north of the village limits of Sebewaing. In order to conduct its sugar beet processing operation, it was necessary to prevent beet particles and waste containing limestone, calcium carbonate, et cetera, from running into the Saginaw bay. To meet this problem and the requirements of the water resources commission, defendant, in 1944, commenced building a series of auxiliary ponds which finally culminated in 8 ponds, varying in size from 5.9 acres to 27.1 acres. The ponds are separated by dikes 12 feet high and wide enough to accommodate a motor vehicle for travel. There are no public roads on defendant's premises.

The pond in which the boys drowned was known as pond No 3, 27.1 acres in size and, at the time of the accident, was around 7 feet deep. Said pond was located approximately in the center of defendant's tract of land.

A pipe approximately 4 feet from the top of the embankment of pond No 3 emptied water and waste products into the pond. This chemical waste prevented freezing at the outlet and covered the surface of the water with a foamy substance for an area of 10 feet by 8 feet.

Sunday afternoon (December 21, 1958) the 2 boys left the home of their grandparents about 3:30 p.m., in subzero weather, informing the grandparents they were going to trap muskrats. When they failed to return, the grandmother conducted a search, to no avail. The marshal of Sebewaing was notified and the marshal, firemen, and citizens of Sebewaing conducted a search for well over an hour before any one thought of the possibility of the boys going onto defendant's property.

A bicycle was found on the C. & O. railroad right-of-way 300 feet north of the public roadway and footprints led from this point along the tracks for about half a mile, then across a ditch to an island in the center of pond No 3 and, after circling about, the steps led to the point where the pipe was emptying into the pond. There was a bunch of frozen foam about 3 feet from where the footprints ended.

The court in a written opinion held that the cause of death was the negligence of defendants in the maintenance of its premises contrary to legal principles, stating:

"Although none of defendant's employees was shown to have specific knowledge that children trespassed upon defendant's premises to trap, they knew that trespassers came upon defendant's land during

the hunting and trapping seasons and that traps
were set at the ponds to catch muskrats which fre-
quented them and actually did considerable damage
to company property by digging holes in defendant's
dikes.  Defendant company put up 'no trespassing'
signs at least twice a year but knew they did not
remain in place and often were ignored.  *  *  *

"On the basis of a careful consideration of all
the evidence and the now well established law of
this State, this court concludes that neither the 2
boys nor their guardians were guilty of contributory
negligence in this case and that the sole, proximate
cause of their deaths in this tragic accident was the
negligence of the defendant company in the main-
tenance of its premises contrary to the following
legal principle:

" 'A possessor of land who knows, or from facts
within his knowledge should know, that trespassers
constantly intrude upon a limited area thereof, is
subject to liability for bodily harm there caused to
them by his failure to carry on an activity involving
a risk of death or serious bodily harm with rea-
sonable care for their safety.' (*Lyshak* v. *City of
Detroit,* 351 Mich 230; *Nielsen* v. *Henry H. Stevens,
Inc.,* 359 Mich 130; 2 Restatement of Torts, §§ 334,
339.)"

The trial court's misinterpretation of our *Lyshak*
and *Nielsen* decisions, *supra,* requires emphasis that
the legal principle enunciated in these opinions was
that defendant in each instance was aware of the
fact that infant trespassers were subjecting them-
selves to danger upon defendant's property.  To
establish this important point beyond question, not
only in regard to this opinion but for future refer-
ence, the following excerpts from Justice TALBOT
SMITH's opinion in *Lyshak* are set forth (pp 232,
238–241, 244, 249, 251):

"The main thrust of plaintiff's argument on appeal
is devoted to the proposition that defendant city

knew that children 'were constantly coming onto the golf course during the summer months, just as they had been doing for over a long period of time.' From this knowledge, says plaintiff, there arose 'a duty on the part of defendant city of Detroit to keep a lookout for such children who might be on the golf course and, in the exercise of ordinary care, to discover their presence and the presence of infant plaintiff in a dangerous situation as presented itself on the day infant plaintiff was injured and exposed to the danger and peril of being struck by a flying golf ball.' (p 232)  *  *  *

"It is clear that the plaintiff himself was not on the golf course as a matter of right.  *  *  *  A powerfully-driven golf ball in flight is a projectile of lethal qualities, as this record amply demonstrates.  *  *  *  The difference between a golf course and a rifle range, then, as a playground for children, is a difference of degree only.

"If duty is born of danger, the duty of the city of Detroit, knowing that children frequent a certain area, is clear.  *  *  *

"To what degree does the landowner still wear the feudal mantle of special privilege, exempting him from the ordinary rules of negligence when children (yes, trespassing children) are known to frequent land upon which he is carrying on an enterprise hazardous to them? Can he simply say, 'They are trespassers' and continue as if they were not there? Can a landowner blindly throw the firing lever and explode blasting charges in a vacant lot that, to his knowledge, is used daily as a playground by (trespassing) neighborhood children? (pp 238–241)
*  *  *

"A distinction has been drawn between the mere condition of the premises (a child falls into a natural pond) and a dangerous situation on the premises caused by the active intervention, the affirmative acts, of the owner (the child is carelessly run down by the owner's horse and buggy). (p 244)  *  *  *

"We have mentioned, but we have not emphasized, the distinction between an injury arising from a condition of the premises and one arising from affirmative dangerous conduct by the owner. * * * In the interests of accuracy, it should be pointed out that the case before us does not involve injury from the mere physical condition of the premises, whether natural or artificial, and hence many of the cases cited by the city against recovery (*e.g., Hargreaves* v. *Deacon,* 25 Mich 1; *Graves* v. *Dachille,* 328 Mich 69) are not precedent for the situation before us. Here we have injury from dangerous activities conducted in a limited area which trespassers in general are known to frequent. * * * Upon these facts, infant plaintiff, even if a trespasser, was a known trespasser (pp 249, 251)."

Justices DETHMERS and EDWARDS wrote concurring opinions in the *Lyshak Case.* Justice DETHMERS emphasized the fact that the defendant's awareness of the infant trespasser was a controlling feature, stating (p 253):

"Here defendants knew of the presence of small children within the range of a flying golf ball before the foursome. Whether, under such circumstances, it was negligence to drive or permit the driving of a ball in the direction of such small children presented, as I think, a question of fact for the jury."

Justice EDWARDS, while stating that *Lyshak* overruled cases "where Michigan has barred recovery for injuries involving infant trespass—holding the effect of child trespass to be identical with that of adult trespass," also said (p 253): "This case concerns a child of tender years—obviously too young to look out for himself. His presence in a place of potential danger, beside a golf course fairway, was known to agents of defendant who were on the tee at the time the golf ball was driven, which caused the loss of the boy's eye."

In *Nielsen* v. *Henry H. Stevens, Inc.*, 359 Mich
130 (relied upon by the trial court), a 7-year-old
boy was injured when defendant's truck collided with
the boy's bicycle while he was riding it in a con-
creted area owned by defendant. This case had been
tried and determined in the lower court prior to the
*Lyshak Case*. It was sent back for a new trial, but
the fact that defendant knew of the child's presence
on its property was made clear by Justice Edwards
when he stated (p 132):

"In *Lyshak*, as in the instant case, the Court was
dealing with a fact situation where plaintiff alleged
active negligence on the part of the defendant toward
a minor child whose presence on defendant's prop-
erty in a place of danger was known to defendant."

*Lyshak* referred to, but did not repudiate, our
early 1872 decision in *Hargreaves* v. *Deacon*, 25 Mich
1, where we held:

"Owners of private property are not responsible
for injuries caused by leaving a dangerous place
thereon—but not immediately adjoining a highway—
unguarded, where the person injured was not on the
premises by permission, or on business, or other
lawful occasion, and had no right to be there."[2]

Likewise, *Lyshak* referred to our 1950 *Graves* de-
cision[3] but, again, did not overrule or repudiate this
decision, but merely stated that the facts in *Graves*
(p 249) "are not precedent for the situation before
us." In the *Graves Case* we considered the question
of whether damages should be awarded in an action
for the death of a 6-1/2-year-old boy by drowning
in stagnant water which had accumulated in a sump
on defendants' property incident to an excavation
operation. After stating (p 74), "We do not find

[2] This wording appears in the headnote in the second, or anno-
tated, edition.—Reporter.
[3] *Graves* v. *Dachille*, 328 Mich 69.

in the record that to defendants' knowledge any boy had previously gone swimming in this sump, or that anyone had ever called to defendants' attention that such might happen with fatal results," we held that the trial judge had erroneously denied defendants' motion for a directed verdict because of the absence of proof that would justify a jury finding that defendants were *guilty of gross negligence*.

*Lyshak* overruled cases referring to defendant's responsibility to trespassers *only* where the facts disclose that defendant owner was aware that child trespassers were entering his property and subjecting themselves to danger and possible harm.

Prior to *Lyshak,* decisions of this Court did not distinguish between a child and an adult trespasser. In *Ryan* v. *Towar,* 128 Mich 463 (55 LRA 310, 92 Am St Rep 481), which was referred to with approval in *Petrak* v. *Cooke Contracting Co.,* 329 Mich 564, it was held: (1) An invitation or a license to cross the premises of another cannot be predicated on the mere fact that no steps have been taken to interfere with such practice; (2) There is no difference between children and adults as to the circumstances that will warrant the inference of an invitation or a license to enter upon another's premises; and (3) The owner of land is not liable to trespassers thereon for injuries sustained by them not due to his wanton or wilful acts.

The trial court in the present case erroneously concluded that while it was not shown that defendant's employees had "knowledge that children trespassed upon defendant's premises to trap," he could apply the principle of *Lyshak* and *Nielsen, supra,* because "they knew that trespassers came upon defendant's land during the hunting and trapping season."

In the recent case of *Slinker* v. *Wallner* (1960), 258 Minn 243 (103 NW2d 377), the Minnesota su-

preme court upheld a directed verdict for the defendant by the trial court in an action for the wrongful death of a child by drowning, stating (pp 248, 251):

. "In upholding recovery in these cases we have gone a long way in placing responsibility upon the occupier of premises to safeguard trespassing children. However, there must come a point where liability does not exist as a matter of law unless occupiers of land are to be held liable merely because children might stray onto their premises. It would seem that reasonable foreseeability is and must be a necessary prerequisite to liability.    *    *    *

"Here, the record is completely devoid of any evidence from which an inference could reasonably be drawn that the owners or occupiers of the premises involved knew or had any reason to know that children could be expected to play on these grounds any more than it is generally known that they might be found anywhere."

"Reasonable foreseeability" as a necessary prerequisite to liability is not established in this record, which is completely devoid of any evidence from which an inference could be drawn that defendant owner knew, or had any reason to know, that infant children would be trapping, playing, or trespassing upon the property.

The record sustains appellant's statement:

"The pond in question was approximately a quarter of a mile from the nearest highway. A more desolate area could not be imagined. It was midwinter and below zero weather. There was no reason to believe children would be in the vicinity. No employee of the defendant company had ever seen children trespassing on its premises or had specific knowledge that children trespassed thereon, as is conceded by the trial judge."

In the 1951 *Petrak* decision, *supra,* we considered whether defendant-owner of road-making equipment

was liable for the death of an 11-year-old boy who
was killed when a 1,500- to 2,000-pound beam fell
on him while he and another boy were playing with
a barrel of tar. In upholding a directed verdict for
defendant, we, after establishing the principle that
the attractive nuisance doctrine is conservatively
applied in this State, said (p 568): "A reasonably
prudent person would not anticipate that children in
the vicinity would be likely to play with the trailer."

Applying the principles established in *Petrak*, we
can and should conclude that "a reasonably prudent
person would not anticipate" the tragic events that
led up to the death of the 2 boys on defendant's
premises.

We conclude that under the evidence in this record
and under the decisions of this Court, including
*Lyshak* and *Nielsen, supra,* the judgment in each
case was against the clear preponderance and con-
trary to the great weight of the evidence.

Question No. 2: *Should the provisions of PA 1953,
No 201 ( CLS 1961, § 300.201 [Stat Ann 1958 Rev
§ 13.1485]) be considered by this Court when said
statute was not raised in the pleadings, nor at the
trial, in the motion for new trial, or in reasons and
grounds for appeal?*

PA 1953, No 201, provides:

"No cause of action shall arise for injuries to any
person who is on the lands of another without pay-
ing to such other a valuable consideration for the
purpose of fishing, hunting or trapping, with or
without permission, against the owner, tenant or
lessee of said premises unless the injuries were
caused by the gross negligence or wilful and wanton
misconduct of the owner, tenant or lessee."

Appellant states:

"Candor compels our admission that this statute
escaped the attention of this brief writer until it

was noted in the December 8, 1962, publication of the negligence law section bulletin of the State Bar of Michigan. It is cited nowhere in the Michigan Reports. We think the force of the enactment is to deprive the plaintiff of any cause of action under the proofs in this case. It is not a matter of affirmative defense nor of limitation. Its language is to abolish any such cause of action. It has no limitation. The cause of action no longer exists. It applies to 'any person'. The statute in question expresses the public policy of the State. It places the law with reference to trespassing hunters, fishermen and trappers, including minors, where it was prior to the more recent adjudications dealing with trespassing children and beginning with *Lyshak* v. *City of Detroit,* 351 Mich 230."

Appellee objects to consideration of the statute by this Court in this appeal because it was not raised in the pleadings, nor at trial, motion for new trial, or in the reasons and grounds for appeal; that it is an affirmative defense and cannot be raised as part of the general issues.

My answer to Question No. 1 discloses that without the application of this statute, on the record submitted, the verdict and judgment in each case should be set aside, but as this opinion is written before acceptance or rejection by my Associates, I am answering Question No. 2.

The general rule is well established that upon appellate review, parties cannot assume a position inconsistent with or different from that taken at the trial and are restricted to the theory upon which the case was defended in the court below.

This rule has its exceptions, and in *Dation* v. *Ford Motor Co.,* 314 Mich 152 (19 NCCA NS 158), we held that the general rule that a question may not be raised for the first time on appeal to the Supreme Court is not inflexible and will not be

applied when consideration of a claim sought to be raised is necessary to a proper determination of the case.

Especially is this true where an applicable statute has been overlooked. It has been held that the party's failure to call the trial court's attention to a relevant statute does not preclude the appellate court from considering it.[4]

There is no claim in this case that defendant was guilty of gross negligence or wilful and wanton misconduct. There is no testimony that even infers that permission was given to the boys, or that a valuable consideration was paid by them for the privilege of going upon defendant's premises.

The statute states there must be proof of (1) payment of a valuable consideration, or (2) proof of gross negligence or wilful and wanton misconduct before a party who is on the land of another for fishing, hunting, or trapping can seek damages for injuries. In the absence of proof sustaining one of these requirements, the statute specifically states "no cause of action shall arise."

The total lack of proof to meet any of these requirements makes this statute applicable and should be considered by this Court as one more reason why the conclusion reached in answer to Question No. 1 should also be the answer to Question No. 2.

The cases are reversed and remanded to the lower court for entry of judgments of no cause of action. Defendant may recover costs.

DETHMERS, J., concurred with KELLY, J.

O'HARA, J. (*concurring in reversal*). I am obligated to vote to reverse with instructions

---

[4] See 4 CJS, Appeal and Error, §§ 241, 242; *Adley Express Co., Inc.,* v. *Town of Darien,* 125 Conn 501 (7 A2d 446); *Bedenbaugh* v. *Adams* (Fla, 1956), 88 So2d 765; *Yannuzzi* v. *United States*

to enter an order dismissing the declarations for
failure to state a cause of action of which the court
had jurisdiction. This is for the reason that the
legislature abolished the cause of action here sought
to be asserted. Fairly read, it seems to me the whole
thrust of the declarations is that the boys entered
upon the property of the defendant to trap; that
defendant had knowledge that many people did so
and that defendant was ordinarily negligent in the
maintenance of the premises.[1] Altering the order
of the paragraphs merely for clarity, the pleadings
read:

"27. That David Heider is the minor son of the
plaintiff, Donald Heider, and on the 21st day of
December, 1958 said son with his brother, James
Donald Heider *and their dog set out muskrat trap-
ping*.
"28. That David Heider with his brother and dog
entered the defendant's premises and walked onto
one of the defendant chemical ponds.
"5. That the defendant knew persons came on
their land where their artificial storage ponds are
located to trap for muskrats, mink, et cetera.
"21. That the defendant failed to have any warn-
ing signs and failed to maintain the property to
protect children." (Emphasis this Court's.)

The wording is identical in the companion case.
The statute[2] involved is herewith set out in its
entirety:

"An act restricting suits by persons coming upon
the property of another for the purpose of hunting,
fishing or trapping; and to declare the limited lia-
bility of owners of property within this State.

---

*Casualty Co.*, 19 NJ 201 (115 A2d 557); *Huntress* v. *Estate of
Huntress* (CCA 7), 235 F2d 205 (61 ALR2d 682).

[1] In view of the statute, it matters not whether the boys were
licensees, invitees, or trespassers.

[2] PA 1953, No 201 (CLS 1961, § 300.201; Stat Ann 1958 Rev
§ 13.1485).

*"The People of the State of Michigan enact:*

"300.201 Prohibiting tort actions against landowners for recovery of damages, unless caused by negligence, etc., of owner, tenant or lessee. [M.S.A. 13.1485]

"Sec. 1. *No cause of action shall arise for injuries to any person who is on the lands* of another without paying to such other a valuable consideration for the purpose of *fishing, hunting or trapping, with or without permission,* against the owner, tenant or lessee of said premises unless the injuries were caused by the gross negligence or wilful and wanton misconduct of the owner, tenant or lessee.

"Approved June 10, 1953." (Emphasis supplied.)

At the time of these unfortunate deaths the Constitution limited the original jurisdiction of our circuit courts to "all matters civil and criminal not excepted in this constitution and not prohibited by law." (Const 1908, art 7, § 10.)[3]

No right or rights of action as pleaded here could have accrued, to the personal representatives of either decedent, the declared acts of defendant *not* being "such as would (if death had not ensued) have entitled the party injured to maintain an action and recover damages, in respect thereof" (CL 1948, § 691.581 [Stat Ann 1959 Cum Supp § 27.711]).

With or without raising of the question below, the circuit court was possessed of no jurisdiction to hear and determine the merits of plaintiffs' allegations. See the long list of authorities cited in *In re Fraser's Estate,* 288 Mich 392, 394, as supporting this settled principle:

"Courts are bound to take notice of the limits of their authority, and a court may, and should, on its own motion, though the question is not raised by the pleadings or by counsel, recognize its lack

---

[3] For the corresponding present provision, see Const 1963, art 6, § 13.

of jurisdiction and act accordingly by staying pro-
ceedings, dismissing the action, or otherwise dis-
posing thereof, at any stage of the proceedings."

The principle quoted was applied in *Lehman* v.
*Lehman,* 312 Mich 102, 105 and *Second National
Bank & Trust Co.* v. *Wayne Circuit Judge,* 321 Mich
28, 45. It is controlling here; hence my vote as
indicated. The situation here is the same as if
plaintiff had declared for alienation of affections.[4]
Defendant, having failed to raise the jurisdictional
question in due time, should not have costs.

BLACK and SMITH, JJ., concurred with O'HARA, J.

ADAMS, J. (*dissenting*). I am unable to agree
with Justice KELLY that the trial court misinter-
preted *Lyshak* v. *City of Detroit,* 351 Mich 230, or
*Nielsen* v. *Henry H. Stevens, Inc.,* 359 Mich 130.
The trial judge found:

"Defendant company certainly was carrying on
a legitimate business enterprise on its own premises.
It was quite clear from all the evidence in the case,
however, that *an extremely deceptive and treacher-
ous condition existed in the surface of the ice around
the pipe discharging water into the pond.* Defend-
ant easily could have employed some sort of a
warning device and sign to serve as a notice or
caution to *trappers and trespassers who were known
to use that area frequently.* That would not have
limited or interfered in any way with defendant's
profitable conduct of its business." (Emphasis
added.)

There is ample evidence in the record to support
the findings of the court and jury that defendant's

_____

[4] See CL 1948, § 551.301 *et seq.* (Stat Ann 1957 Rev § 25.191
*et seq.*) and CL 1948, § 600.2901 (Stat Ann 1962 Rev § 27A.2901).
—REPORTER.

property was frequented by trappers, hunters, skaters, and other trespassers. Richard Jahr, an employee of Michigan Sugar, testified:

"*Q.* Do you conduct any activity on these ponds?
"*A.* Well, I've trapped them, being within that area I would say for at least 20 years.  *  *  *
"*Q.* Well, did they give you permission or didn't they?
"*A.* They actually did not give me permission, he says in his own words, for all of them *they would like to get rid of the muskrats because they do damage on the ponds,* but if I went onto them I was on my own risk.
"*Q.* Now, have you ever seen any evidence while you are trapping that other people trapped up there?  *  *  *
"*A.* Yes, I seen others out there trap.
"*Q.* How many people do you know of that trap out there?
"*A.* Three that I know of." (Emphasis added.)

Max Meissner, also an employee of Michigan Sugar, testified that he had been aware of the fact that people were trapping in the area and that hunters often used the land in question, as many as 30 or 40 during a hunting season.

Floyd Taylor, a truck driver living in Sebewaing, testified it was common knowledge in the community that the Sugar Company premises were a good area for trapping:

"Yes, I think that just about everybody that did any trapping around town knew that that was one of the best areas around, to trap."

He testified that his own boy, when 14 and 15 years old, trapped on the ponds. There was also evidence of the presence of children, small footprints having been seen and the ponds having been used for skating.

The trial judge then went on to apply the proper legal principles. Justice Kelly would now restrict the rule "to trespassers *only* where the facts disclose that defendant owner was aware that child trespassers were entering his property and subjecting themselves to danger and possible harm." The requirement of reasonable care for the safety of a trespasser is subject to no such condition. *Swanson* v. *City of Marquette*, 357 Mich 424. I am unable to perceive the legal or lethal difference between a "powerfully driven golf ball in flight" (*Lyshak*), "a negligently driven truck" (*Nielsen*), "an improperly maintained electrical substation or transformer vault" (*Swanson*), and "an extremely deceptive and treacherous condition * * * in the surface of the ice around the pipe discharging water into the pond."

As Justice Talbot Smith observed in *Lyshak* (p 239):

"We accept as commonplace today the principle that there is a duty upon all men so to conduct their activities as to minimize *the likelihood* of harm to others." (Emphasis added.)

Special findings were made by the jury in answer to the following questions:

"Question No. 1—Was the pond where the boys met their death a place where the Michigan Sugar Company knew, or should have known, that children were likely to trespass? [x] Yes [ ] No

"Question No. 2—Was the place where the boys met their death a place where a condition existed which the Michigan Sugar Company knew, or should have known, involved an unreasonable risk of death to child trespassers? [x] Yes [ ] No

"Question No. 3—Was the utility of maintaining the pond by the Michigan Sugar Company in the condition it was slight as compared to the risk to child trespassers as involved therein? [x] Yes [ ] No"

Likelihood and foreseeability are much the same thing. I do not disagree with Justice KELLY's quotation of the rule in *Slinker* v. *Wallner* (1960), 258 Minn 243 (103 NW2d 377), but I do with his interpretation of the facts in these two cases where, in my opinion, likelihood of or foreseeability of possible harm existed before the tragedies occurred.

With regard to the question of damages and whether the awards were excessive or insufficient, it is necessary first of all to determine the persons who would be entitled to share in recovery. In the case of James D. Heider, the trial court equated the term "pecuniary injury" as used in the wrongful death act (CL 1948, § 691.581 *et seq.* [Stat Ann 1959 Cum Supp § 27.711 *et seq.*])* with our former requirement that the beneficiary of the statutory action suffering pecuniary injury be one who was entitled to financial support from the deceased, citing *MacDonald* v. *Quimby,* 350 Mich 21. At the very latest, since our decision in *Wycko* v. *Gnodtke,* 361 Mich 331, however, we have allowed recovery of damages for pecuniary injury in such actions notwithstanding the absence of an obligation by the deceased to support the person suffering such pecuniary injury. *MacDonald* v. *Quimby* is applicable yet to the extent that it was there held, by all members of the Court, that the persons whose "pecuniary injury" is compensable under the death act are those who, in the variant circumstances of intestate succession, might be entitled to inherit the personal property of one dying intestate. In *MacDonald,* the deceased left surviving him a widow and children, but the Court permitted recovery of the pecuniary injury suffered by deceased's mother notwithstanding the fact that, because deceased left a widow and children surviving him, his mother would not have

* See, currently, CLS 1961, § 600.2922 (Stat Ann 1962 Rev § 27A.2922).

been entitled to inherit any of his personal estate had he died intestate.

The restriction of the class to Donald Heider, father of James D. Heider, by the trial judge was improper, since, in this case, there were other members of the class who should have been considered. The trial court said:

"This court finds from the evidence at the trial that the deceased James Heider had lived long enough to be able to demonstrate much more clearly than his younger brother David the talents, abilities, character, and accomplishments which gave such distinct and definite promise of a useful life and a good citizen. As a consequence, it would seem to follow irrefutably that his death would occasion the greater loss, not only to the community but also to his whole family, and that therefore the damages should be higher in his than in his brother's case. This court would be inclined to reach such a conclusion as a matter of simple and obvious justice."

Since the court did not make an award to cover the pecuniary injury to all of James' next-of-kin, it will be necessary to remand the case for a reconsideration of such award.

Some further comment is appropriate with regard to the assessment of damages which the trial judge did make. He awarded $10,989.65 for the cost of raising James. The sum was incorrectly allocated to Donald Heider, father of James, who did not provide such cost. It should have been allocated to James D. Heider's grandfather, who incurred the cost, and who, being within the statutory class, would be entitled to recover.

The trial judge also awarded $30,000 for loss of the society and companionship of James Heider by his father, Donald Heider, who was 33 years old at the time of the trial. James was the son of his first marriage. His wife deserted the child. Her

whereabouts are unknown. Heider contributed nothing to the support of James. He was separated from his second wife. In 1953, he was arrested for nonsupport. In 1957, he pleaded guilty to robbery and was sentenced to the State prison of southern Michigan. He contracted cancer and was discharged from prison July 6, 1959, on special parole. He saw James frequently and went hunting and fishing with him. At the time of trial he had a life expectancy of 2 to 5 years. An assessment of $30,000 for the loss of society and companionship by this father upon this record cannot but raise questions. Since the assessment of damages should be redetermined, on remand for further proceedings, we need not determine whether the award made for loss of the child's society and companionship by his father was excessive. Upon retrial the court should consider carefully all elements of pecuniary injury suffered by all members of the statutory class and he should issue the certificate authorized by the wrongful death act setting forth the amount of such damages and the proportion thereof which represents the pecuniary loss suffered by each of the members of the statutory class.

In the case of 8-year-old David Heider, the jury awarded damages of $125,000. It is asserted that this sum is excessive, against the clear preponderance of the evidence and contrary to its great weight. Appellant states:

"Mrs. Heider, with the $125,000, at her present age would be able to purchase an annuity which would pay her a guaranteed monthly income of $455 for her lifetime."

The loss of companionship in David's case runs not only to the father and mother but also to a younger brother and sister. The amount of damages recoverable in actions for death by wrongful act

is one peculiarly within the province of the jury. Taking into account the total family relationship, the probable dependency of the mother upon David, and the loss to the family group of the life of David over a useful lifetime, we do not find the verdict excessive.

With regard to PA 1953, No 201 (CLS 1961, § 300.-201 [Stat Ann 1958 Rev § 13.1485]), I am unable to agree with Justice Kelly. The declarations do not disclose the applicability of PA 1953, No 201, to bar plaintiff's asserted causes of action. Paragraphs 4, 5, and 6 of each declaration allege that the defendant knew that people went upon defendant's lands to hunt, trap, fish, and for other purposes; paragraph 27 of each declaration alleges that the two deceased boys and their dog "set out muskrat trapping"; and paragraph 28 of each declaration alleges that the boys and their dog entered the defendant's premises and walked upon one of the defendant's chemical ponds. Standing alone, such allegations are not sufficient, as it is claimed, to invoke the statutory bar of PA 1953, No 201, on the conclusionary assumption that the boys were "on the lands of another * * * for the purpose of fishing, hunting or trapping." Nor, of course, did the defendant plead any facts from which either the trial court or we properly could conclude that the boys' purpose in going upon defendant's land was one of the purposes named in the statute which would bar the causes of action sought to be asserted. Finally, the record as made below fails to disclose any direct evidence that the boys in fact went upon the defendant's lands to fish, hunt, or trap.

*Dation* v. *Ford Motor Co.*, 314 Mich 152 (99 NCCA NS 158), is cited by Justice Kelly in support of the proposition that, while usually a question may not be raised for the first time on appeal to the

Supreme Court, the rule is not inflexible. In *Dation,* this Court was dealing with an appeal from the workmen's compensation department. A question of law arose upon the appeal which admittedly the department (as a fact finding body) could not settle even if the matter had been remanded to it. The entire question being before this Court, the Court elected to pass upon it.

The problem has not received uniform treatment. Plaintiff cites *Hollister* v. *Kinyon's Estate,* 195 Mich 261; *Lewis J. Selznick Enterprises* v. *Harry I. Garson Productions,* 202 Mich 106; *D. & W. Rottschafer Real Estate* v. *Morris,* 245 Mich 192; and *Shaver* v. *Associated Truck Lines,* 322 Mich 323. Counsel for defendant stress *Morris* v. *Radley,* 306 Mich 689, in support of the exception to the rule and argue that we should apply the exception here to avoid a miscarriage of justice because of the inadvertence of counsel in overlooking and failing to raise the application of the statute before the trial court. This is not a proper case to apply the exception. Only when the matter was presented to the trial judge and he refused to rule, or, under the clearest of circumstances, where it is unquestioned that the entire matter is before this Court, should the exception prevail.

Such is not this case in which the question is first presented here as an afterthought and accorded cursory treatment and briefing. For these reasons it is not applicable at this late juncture in the case of David Heider. Litigation must come to an end. Defendant has had its day in court with ample opportunity to raise and present all defenses. It is not the function of this Court to correct, on review, the inadvertence or failure of counsel to present what might have been a defense.

In the case of James D. Heider, upon remand the trial court should determine any questions of fact

which may be raised and especially the question as to whether he went on "the lands of another   *   *   * for the purpose of fishing, hunting or trapping." The court will also consider and determine any issues with regard to the legality and construction of the act which may be raised, such as whether a minor is a "person" within the meaning of the statute, the word "person" being undefined and subject to construction in the light of a strong public policy favoring the protection of minors; whether the classification of the statute violates the due process clauses of the United States and Michigan Constitutions and the equal protection clause of the United States Constitution.

The judgment in the case of Donald Heider, administrator for the estate of James D. Heider, should be remanded for consideration of the applicability of PA 1953, No 201, *supra*, and for possible reassessment of the damages therein. Costs to neither party, each having prevailed in part.

The judgment in the case of Donald Heider, administrator for the estate of David Heider, should be affirmed. Costs to appellee.

T. M. KAVANAGH, C. J., and SOURIS, J., concurred with ADAMS, J.