## GRAVES *v.* DACHILLE.

1. NEGLIGENCE—MAINTENANCE OF POOLS OF WATER—ATTRACTIVE NUISANCE—TRESPASSING INFANTS.

   Pools and ponds of water that are maintained on land for legitimate purposes do not create such attractive nuisances as will entail liability upon the maintainer if an infant is drowned or injured by entering therein as the maintained condition is not *ipso facto* dangerous but becomes so only because of the use made of it by the trespassing infant.

2. SAME—ABATEMENT OF NUISANCE—GROSS NEGLIGENCE.

   Fact that pump, that had been used to remove water from sump maintained on defendants' land incident to excavation operations, had been permitted to remain out of repair and the water to accumulate in the sump and that defendants had not abated public nuisance on their property as ordered by a court some 8 or 9 days before plaintiffs' 6½-year-old son was drowned in the unenclosed sump was not proof of gross negligence on part of defendants, especially where the nuisance complained of was from noxious odors and not of stagnant water as a place in which a person would go swimming.

3. SAME—ABATEMENT OF PUBLIC NUISANCE—GROSS NEGLIGENCE—EVIDENCE.

   The failure to abate a public nuisance by stopping the dumping of refuse which created a malodorous condition and filling of holes in which water accumulated, although in violation of city ordinance and some evidence of negligence, was not evidence of gross negligence on part of property owners (Detroit Compiled Ordinances 1945, ch 127, § 1).

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 38 Am Jur, Negligence, § 142 *et seq.*
[1–3] Attractive nuisances.  36 ALR 53; 39 ALR 487; 45 ALR 983; 53 ALR 1347; 60 ALR 1444.
[4–6] 38 Am Jur, Negligence, §§ 2, 47, 48, 178, 179.
[7] 3 Am Jur, Appeal and Error, § 823.

4. SAME—WILFUL AND WANTON MISCONDUCT.

There is no exact standard or measurement by which it may be determined where negligence ends and wilful and wanton misconduct begins, each case being decided on its own facts.

5. SAME—GROSS NEGLIGENCE DEFINED.

Gross negligence, such as authorizes a recovery for a negligent injury, notwithstanding plaintiff's contributory negligence, is an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them.

6. SAME—GROSS NEGLIGENCE—STAGNANT WATER IN SUMP—INFANTS —EVIDENCE.

Evidence in action for death of 6½-year-old boy by drowning in stagnant water which had accumulated in sump on defendants' property incident to its excavation operations *held*, insufficient to justify jury finding defendants guilty of gross negligence, where it does not appear they had been forewarned that permitting stagnant water in the sump was a menace to public safety in that some member of the public might undertake to bathe therein.

7. APPEAL AND ERROR—QUESTIONS REVIEWABLE—GROSS NEGLIGENCE —PROXIMATE CAUSE.

The issue of proximate cause need not be considered, where defendants were not shown to have been guilty of gross negligence or wilful and wanton misconduct by permitting stagnant water to accumulate from 1′ to 6′ deep in sump 50′ x 100′ in which plaintiffs' 6½-year-old son went swimming and drowned.

Appeal from Wayne; Fitzgerald (Frank), J. Submitted April 6, 1950. (Docket No. 28, Calendar No. 44,432.) Decided June 5, 1950. Rehearing denied September 11, 1950.

Case by William Graves and wife, individually and as coadministrators of the estate of Lester Graves, deceased, against Harry Dachille and wife, doing business as Dachille Trucking Company, for injuries sustained when decedent went swimming on

defendants' land. Verdict and judgment for plaintiffs. Defendants appeal. Reversed.

*Ramon A. Martinez,* for plaintiffs.

*Maiullo & Maiullo,* for defendants.

NORTH, J. Alleging that the death of their minor son was caused by defendants' negligence in failing to abate a nuisance as hereinafter detailed, plaintiffs, as coadministrators of their son's estate, recovered on trial by jury a judgment for $4,200. Defendants' motion for a directed verdict at the close of the proofs and their subsequent motion for judgment *non obstante veredicto* were denied. Defendants have appealed.

Defendants own a parcel of land consisting of 6 or 7 acres in the city of Detroit. Doing business as a partnership under the name of Dachille Trucking Company, defendants engaged in excavating sand from this property with a power shovel, and selling same for various construction uses. And as deep excavations resulted from the above operations, defendants for a charge per load permitted the dumping in excavated areas of dirt, broken concrete, and miscellaneous rubbish. To prevent interference by water with their excavating operations, defendants caused a hole or sump to be dug in the low portion of their excavated area; and as drainage water collected in this sump it was pumped through hose into the public sewer. At the time of the fatality which resulted in this suit, the sump, as stated in the circuit judge's opinion in denying defendants' motion for judgment *non obstante veredicto,* "was rectangular in shape, over 100 feet in length and over 50 feet in width. Its depth varied, sloping on the longer sides from 1 foot at the sides to 6 feet in the center and deepening more abruptly on the shorter sides."

Shortly prior to the death of plaintiffs' son, defendants had permitted water to accumulate in the sump, and there is testimony that this water was stagnant and the surface covered with oily scum. Defendants introduced testimony to the effect that the above accumulation of water in the sump was due to the fact that the pump used to remove the water from the sump became out of repair.

On September 7, 1946, plaintiffs' decedent, Lester Graves, his younger brother, and another boy named Billie, about 4 years old, were playing about the sand pit and sump. Lester, who was 6½ years of age, did not accidentally fall into the sump. Instead, as stated in plaintiffs' brief: "Lester, the deceased, told his little brother and Billie that he was going in swimming, then he took off his clothes, and he went into the water, never to come up alive."

Defendants' property was unenclosed. Pembroke avenue was 139 feet north of the sump. An employee of defendants' was stationed in sort of a shack on the property. His duties were to collect the charges for dumping on the premises, and also to keep both adults and children from trespassing thereon, but this latter matter was by no means uniformly accomplished.

It appears from the record, and the parties agree, that plaintiffs' case was not tried on the theory that defendants maintained an attractive nuisance nor on the theory that plaintiffs could recover by proving only ordinary negligence on the part of defendants which was a proximate cause of the drowning of plaintiffs' decedent. Plaintiffs have not appealed from the ruling of the trial judge, who, in passing upon defendants' motion for a directed verdict said:

"Let the record show that the court has taken the defendants' motion for a directed verdict under ad-

visement under the Empson act,* and will submit the case to the jury on the theory of gross negligence only—wilful and wanton misconduct.  *  *  *  I will likewise charge that contributory negligence is not involved because contributory negligence of the child or the parents is not a defense if gross negligence is proven."

Appellants and appellees agree that the only issue raised on this appeal is: "Did the trial court err in denying defendants' motion for directed verdict, and for judgment *non obstante veredicto,* and [in] submitting the case to the jury on the theory of gross negligence or wilful and wanton misconduct?"

Appellees take the position, as did the trial judge, that in the aggregate the proof of negligent conduct on the part of the defendants about to be noted was sufficient to present a jury question as to defendants having been guilty of gross negligence—wilful and wanton misconduct—which was a proximate cause of the fatality here involved. The negligence charged, and as to which there was proof, was:

(1) That defendants allowed stagnant water to accumulate and remain in the sump, knowing that children of tender years, though trespassers, frequented the premises; (2) That defendants failed to erect fences or to provide effective guards to keep children of tender years away from the excavation, especially since it was known to defendants that these premises were more or less frequented by both adults and children; (3) That defendants failed to promptly replace the "broken pump" which had been used to remove water from the sump; and (4) That defendants failed to abate the nuisance condition on their premises even after defendants, on complaint of parties residing in the locality, were found guilty

---

* CL 1948, § 691.691 *et seq.* (Stat Ann and Stat Ann 1949 Cum Supp § 27.1461 *et seq.*).—REPORTER.

of maintaining a nuisance, which conviction occurred 8 or 9 days before the death of plaintiffs' decedent.

Our review of this record brings the conclusion that the trial judge was in error in not granting defendants' motion for a directed verdict and in his later denial of defendants' motion for judgment *non obstante veredicto*. Defendants' business of excavating on their own property and disposing of sand was obviously a legitimate enterprise. The digging of a hole or sump in which to collect drainage water was a necessary incident to the business, and allowing water to accumulate in the sump on defendants' property was within their legal right. If it became stagnant it might become a nuisance and subject to abatement, but even so the presence of stagnant water was certainly not as much of an invitation or inducement for a boy to go swimming in the sump as it would have been if filled with water that was not stagnant. We do not find in the record that to defendants' knowledge any boy had previously gone swimming in this sump, or that anyone had ever called to defendants' attention that such might happen with fatal results.

Defendants were not obligated to fence their premises in an effort to prevent trespassers from entering and going into the excavation thereon where water had collected.

"Scattered over the length and breadth of the land are innumerable ponds and lakes, artificial and natural; and occasionally a boy or man loses his life while wading, or bathing, in such body of water. If, as a matter of law, the owners of fishponds, millponds, gin ponds, and other artificial bodies, wherein it is possible that boys may be drowned, can be held guilty of actionable negligence unless they inclose or guard same, few will be able to maintain these utilities, and to our minds an intolerable condition

will be created." *Thompson* v. *Illinois Central R. Co.,* 105 Miss 636, 651 (63 So 185, 47 LRA NS 1101).

"Throughout the annotations it is pointed out, without exception, that pools and ponds maintained for legitimate purposes do not create such attractive nuisances as will entail liability upon the maintainer thereof if an infant is drowned or injured by entering therein, since the maintained condition was not *ipso facto* dangerous, but only because of the use of it made by the trespassing infant." *Puckett* v. *City of Louisville,* 273 Ky 349, 355 (116 SW2d 627).

Numerous holdings in this jurisdiction are in accord with the law just above quoted and are controlling of decision in the instant case. See *Hargreaves* v. *Deacon,* 25 Mich 1; *Kaumeier* v. *City Electric Railway Co.,* 116 Mich 306 (40 LRA 385, 72 Am St Rep 525); *Peninsular Trust Co.* v. *City of Grand Rapids,* 131 Mich 571; *Stark* v. *Muskegon Traction & Lighting Co.,* 141 Mich 575 (1 LRA NS 822); *Habina* v. *Twin City General Electric Co.,* 150 Mich 41 (13 LRA NS 1126); *Preston* v. *Austin,* 206 Mich 194; *LeDuc* v. *Detroit Edison Co.,* 254 Mich 86.

Testimony that for a relatively short time immediately prior to the drowning of plaintiffs' son defendants failed to repair a damaged pump that had been used to remove the water from the sump and had permitted water to accumulate in the sump, or that within 8 or 9 days after defendants were found guilty of permitting a nuisance on their premises they did not, as was ordered, abate the same, was no proof of gross negligence. And it may be noted that the complaint of a nuisance condition was not on the ground that the water in the sump was an inducement to bathe or swim therein. The complaint charged that defendants "did then and there create and maintain a nuisance by way of using vacant property as a dumping ground for waste materials

and debris of all kinds, particularly some refuse sometimes which burns and creates a bad, offensive and noxious odor; that large slabs of cement and other debris pile on this property; that they dig out sand and leave large cavities which fill with water; that children play in this debris; that it is a dangerous hazard and eye sore and a general nuisance and also a health menace to the neighborhood, to the evil example of all others and contrary to the ordinance of said city in such case made and provided, being Detroit Compiled Ordinances 1945, ch 127, § 1."

In an effort to find in the record probative support for gross negligence plaintiffs say in their brief:

"The Dachille Trucking Company was convicted on August 30, 1946, of maintaining a public nuisance on the premises here in question, the particular details of which were embodied in a complaint which was read to Harry Dachille, principal defendant, in court the day of the trial. He was imposed a fine of $50 which he paid, and was told then and there 'to clean the situation up, to close the holes and discontinue taking out same (sand) out of the vacant lot.' From that moment on, even if at no other time previously, the defendants had 'a manifest duty' to perform with reference to the public, and specially those children, inasmuch as the complaint informed him that they played 'in this debris' and it was 'a dangerous hazard.' He was convicted on these facts and warned of the danger fully 9 days before Lester Graves drowned there. Harry Dachille had the manifest duty under the law to obey the city ordinance, abate the nuisance, and remove the 'dangerous hazard.'"

But nothing in this record tends to prove that defendants were in any way forewarned that permitting water in the sump was a menace to public safety in that some member of the public might undertake to bathe or swim in the stagnant water and in consequence come to his death by drowning. As before

stated, defendants' failure to remove stagnant water from the sump within 8 or 9 days after they were found guilty of permitting or maintaining a nuisance on their property was not evidence of gross negligence, regardless of the fact that in failing to abate the nuisance defendants were violating the city ordinance which was some evidence of ordinary negligence.

"There is no exact standard or measurement by which we may determine where negligence ends and wilful and wanton misconduct begins, and each case must be decided on its own facts." *Goss* v. *Overton,* 266 Mich 62.

" 'Gross negligence, such as authorizes a recovery for a negligent injury, notwithstanding plaintiff's contributory negligence, is an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them.' (Citing numerous cases.)" *Patton* v. *Grand Trunk Western Railway Co.,* 236 Mich 173.

Our review of this record brings the conclusion that no testimony was produced at the trial which would justify a jury finding that defendants were guilty of gross negligence. It follows that the trial judge erroneously denied defendants' motion for a directed verdict and their later motion for judgment *non obstante veredicto.*

In view of our holding above indicated, it is not necessary to consider the issue of proximate cause urged in appellants' brief as a ground for reversal, but see *LeDuc* v. *Detroit Edison Co., supra.* The judgment entered in the circuit court is reversed, with costs of both courts to defendants.

BOYLES, C. J., and REID, DETHMERS, BUTZEL, CARR, BUSHNELL, and SHARPE, JJ., concurred.