417 P.2d 75

**Steve HODGE and Louise K. Hodge, husband and wife, Plaintiffs-Respondents,**

v.

**LeRoy BORDEN, Defendant-Appellant.**

No. 9635.

Supreme Court of Idaho.

July 25, 1966.

Elam, Burke, Jeppesen & Evans, Boise, for appellant.

Vernon K. Smith, Boise, for respondents.

SMITH, Justice.

Appellant appeals from a judgment entered against him awarding damages to respondents for injuries sustained in an automobile accident; appellant also appeals from an order denying a motion for a new trial and from an order denying judgment notwithstanding the verdict. The events leading up to the accident, and the happening of the accident, on the mountain road north of the City of Boise, are hereinafter set forth.

On Saturday, October 19, 1963, at about 10:00 o'clock in the evening, respondent Steve Hodge and his wife Louise K. Hodge who was a deaf-mute, appellant, Alvin Borden a brother of appellant, and Jim Hodge a son of respondents, desired to celebrate the occasion of the birthday of Jim Hodge. They used appellant's automobile for transportation. They visited three lounges in the City of Boise during the course of the next three hours, the male members of the party partaking of one or perhaps two rounds of drinks in each lounge.

When closing time came (approximately 1 o'cock a. m. of the morning of October 20, 1963) they returned to appellant's automobile—Jim Hodge and Alvin Borden having purchased a 6-pack of beer. Respondents got into the back seat and the three young men, with appellant driving, got into the front seat of the automobile. After purchasing gasoline for the car, they then drove to the north end of 8th Street in the City, and then continued north toward Mile High Road, past where the pavement ended, onto the dirt (decomposed granite) road. Respondent Steve Hodge and Alvin Borden requested that they be taken to their homes, situated some distance from the north end of 8th Street, and at the southerly border of the City of Boise. Appellant, driver of the car, did not comply with those requests, but continued driving northerly on the dirt road and past some water towers, situated about one and one-half miles north of the City of Boise, before stopping, about one-half to three-fourths of a mile beyond the water towers. In the course of this ride, respondent Louise K. Hodge went to sleep.

After alleviating calls of nature, appellant and his brother Alvin commenced arguing

as to whether appellant should continue driving the automobile, or whether LeRoy should drive it. There was some discussion concerning the driving ability of appellant after having taken the several drinks, i. e., how much the intoxicating liquor may have affected his judgment and reflexes, and his ability to drive and control his automobile. Both Alvin Borden and Steve Hodge, testified that they had no qualms about appellant's ability to handle the vehicle when they left the last bar visited to go home. After a short interval Steve Hodge told Alvin Borden to let his brother LeRoy drive the car to a certain turn-around place on the road. After all of them had returned to the automobile, appellant started driving the vehicle on up the road. He did not stop at the turn-around point, but continued on, driving at a fairly rapid rate of speed, considering the type and condition of the road. The car veered off the road, and rolled over a couple of times. Both respondents were thrown from the car and sustained injuries.

On December 17, 1963, respondents filed their complaint, charging defendant with gross negligence, and with having wilfully and intentionally caused the accident. Subsequently, during the course of the trial, respondents, with leave of court, amended their complaint to include voluntary intoxication as a ground for recovery. At the close of respondents' case appellant sought, by motion, an involuntary dismissal which the court denied. After all of the evidence had been received, appellant moved for an involuntary dismissal and for a directed verdict, both of which motions the court denied. Although the court instructed the jury on appellant's affirmative defense of assumption of risk, it refused to give his requested instructions concerning his defense of contributory negligence of respondents. The jury returned a verdict of $6,000 for respondents and the court entered judgment thereon. Appellant, by motions, sought judgment notwithstanding the verdict and a new trial, which the court denied. From the judgment and the orders denying the motions, appellant has appealed.

Appellant assigns error of the trial court in allowing respondents, during the trial, to amend their complaint so as to allege appellant's voluntary intoxication as a ground for recovery, since the issues framed by the pre-trial order did not contain any allegation by respondents of appellant's intoxication, and respondents did not seek to amend that order.

Respondents, during the trial, moved to amend their complaint after appellant's counsel objected to the introduction of respondents' evidence touching upon appellant's intoxication, as not included within the purview of the pleadings. In support of their motion, respondents pointed to appellant's pre-trial statement which the trial court, by adoption, made a part of the pre-trial order, and having ordered that the pre-trial order supplement the pleadings and that "the pleadings are deemed amended to conform to this order."

Appellant, in his pre-trial statement, adopted as a part of the pre-trial order, alleged that respondents were contributorily negligent "in furnishing intoxicating liquor and in their failure to protest and in their failure to cease riding with defendant [appellant]." Appellant, in support of the defense of assumption of risk, alleged that respondents bought intoxicating liquor for consumption by both themselves and appellant; that respondents knew that appellant had consumed intoxicating liquor; that respondents knew that intoxicating liquor affects the mind and judgment of persons consuming the same; that respondents themselves consumed intoxicating liquor along with appellant; that respondents did not object to riding on the highway where the accident occurred; that they did not alight from the car when they had ample opportunity to do so; and did not protest, or request that they be permitted to disembark from the automobile.

The trial court remarked that the opening statements of counsel for both parties referred to "the drinking that was done by everyone up to this point," meaning generally prior to the time of the accident.

Inasmuch as the issue of intoxication was raised by appellant as a defense, the trial court's ruling, that respondents' motion made during the trial to amend their complaint so as to allege appellant's voluntary intoxication as a ground for recovery, did not come "by way of surprise to anyone", was correct. Moreover, since the issue of intoxication was tried at least by implied consent of the parties, the court properly allowed the amendment. I.R.C.P. 15(b). See also McMinn v. Holley, 86 Idaho 186, 384 P.2d 229 (1963); Morford v. Brown, 85 Idaho 480, 381 P.2d 45 (1963); Reynolds v. Continental Mortgage Co., 85 Idaho 172, 377 P.2d 134 (1962).

Appellant assigns as error the trial court's refusal to admit in evidence the testimony of Dwight K. Wells, the court reporter and notary public before whom the deposition of respondent Steve Hodge was taken, appellant contending that Hodge subsequently changed certain portions of his testimony and which changes he allegedly denied when he testified during the trial.

The testimony in Steve Hodge's deposition, taken on February 12, 1964, and his testimony elicited on his cross-examination at the trial to which the assignment is directed, is as follows:

At the trial appellant's counsel directed Hodge's attention to the driving of appellant's automobile on the mountain road north of Boise. He was asked if he had testified in his deposition as to whether the car was stopped "anywhere along there," to which he answered, "No, he was not stopped;" and further whether he had testified that the car was never stopped at any place before the accident, to which he had answered, "I said they had stopped once." Again asked if he so testified, he stated that he did not, but that he had testified that they "stopped once." He then was asked whether he had testified at the time of taking the deposition, that if the car had stopped, "you would have got out," to which he answered, "I certainly would."

On recross-examination Hodge was asked whether he requesetd changes in his answers, referring to whether the automobile had stopped anywhere on the road, to which he answered, "No." He then testified in effect that he never read the changes in the testimony, "until yesterday."

On redirect examination Hodge stated that he recalled that at the time of the taking of the deposition the request was made that the deposition be read later so that he, Hodge, could ascertain whether the shorthand reporter had taken down his intended testimony. He then was asked " * * * did you eventually correct that deposition so that it would say what the truth was?" to which he answered, "Yes."

Respondents' counsel then offered the entire deposition in evidence to which appellant's counsel objected on various grounds and the court sustained the objection.

When Mr. Wells was called as appellant's witness, respondents' counsel asked him the same questions that he had asked Hodge, adding that after Hodge later had read the deposition, whether he, Wells, made the changes to the effect that the automobile stopped once. Appellant's counsel objected to the question, the main objection being that the deposition itself would constitute the best evidence. The court sustained the objection.

Mr. Wells then testified to questions propounded by respondents' counsel in aid of an objection that some changes were made in the deposition when it was submitted to the witness Hodge.

I.R.C.P. 30(e) provides that when the testimony is transcribed, the deposition shall be submitted to the witness for examination; shall be read to, or by, him, unless such examination is waived, and that any changes in form or substance that the witness then desires to make shall be entered upon the deposition by the officer taking the deposition with a statement of the reasons given by the witness for mak-

ing the changes. The deposition is then signed by the witness unless the parties waive the formality of signing. The rule then provides that the deposition may be used as fully as though signed unless on a motion to suppress under I.R.C.P. 32(d), the court holds that the reasons given for the refusal to sign require rejection of the deposition in whole or in part.

The deposition signed by the witness Steve Hodge, shows his testimony as originally elicited, that is to say, that the automobile did not stop at any place on the mountain road before the accident; it then shows the change, that "it [the automobile] stopped once" before the time of the accident, such change appearing in two places and both changes being initialed "DKW."

■ I.R.C.P. 30(e) clearly contemplates that both the original and changed testimony will appear in the deposition, together with the reasons given by the witnesses for making the changes. While the referred to changes appear in the deposition, the reasons for the changes are not shown.

Appellant made no motion to suppress the deposition or any portion thereof. The respondent Steve Hodge, in his testimony given at the trial, gave reasons and explanation for the changes. Moreover, Steve Hodge, at the time of the trial, on redirect examination, gave a plausible reason for making the changes, i. e., so that the deposition would state the truth.

Under I.R.C.P. 32(d) "Errors and irregularities in the manner in which the testimony is transcribed or the deposition is prepared [and] signed * * * are waived unless a motion to suppress the deposition or some part thereof is made with reasonable promptness after such defect is, or with due diligence might have been, ascertained."

■ The two aforesaid rules, when read together, contemplate that any objection to a deposition because of changed answers or failure of the officer to show both the original and changed answers and the reasons for the changes, should be made by timely motion and not by oral testimony during the trial. No motion was made to correct or supplement the deposition. The failure to make such a motion in effect constituted a waiver of any objection to the deposition for any purpose except for use for purposes of impeachment or contradiction. I.R.C.P. 26(d) (1) provides:

"Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness."

I.C. § 9–1210 provides for impeachment of a witness by showing that at other times he has made statements inconsistent with his present testimony; but before such can be done, "the statements must be related to him, with the circumstances of times, places and persons present, and he must be asked whether he made such statements, and if so, allowed to explain them." And if the statements be in writing, they must be shown to him.

■ The record shows that appellant's counsel developed the "circumstances of times, places and persons present," relating to the taking of Hodge's deposition, although such was not specifically developed during the examination of the witness Hodge. The witness was asked whether he made the statements but the record appears to be in doubt as to whether he was allowed, upon appellant's cross-examination, to explain the statements and the changes made. Nor does the record show that the statements, which were in writing, were shown to the witness before any question was put to him concerning them. Under the circumstances, even though the deposition was intended to be used for the purposes of impeachment of the witness, we are constrained to the view that the court did not err in sustaining the objections to the introduction of the deposition by virtue of the non-compliance with the statute in the respects mentioned; and for the further reason that it was not

necessary that the entire deposition be introduced in evidence, but only the portions as were pertinent to the examination of the witness.

■ In heeding the admonition of I.C. § 1–205,[1] upon a retrial of this cause the relevant portion of the deposition may be introduced in evidence, if the proper foundation be laid therefor as provided by I.C. § 9–1210, for use for purpose of impeachment and contradiction as provided by I. R.C.P. 26(d) (1).

■ The testimony of Mr. Wells, the court reporter and notary public before whom the deposition was taken, may be adduced for the purpose of showing the testimony as originally taken, and the changes as authorized and directed by the witness Hodge. 98 C.J.S. Witnesses § 616 (2) (a); Meyers v. United States, 84 U.S. App.D.C. 101, 171 F.2d 800 (1948); Mea-

dors v. Commonwealth, 281 Ky. 622, 136 S.W.2d 1066 (1940); People v. Goldberg, 302 Ill. 559, 135 N.E. 84 (1922); People v. Shortridge, 179 Cal. 507, 177 P. 458 (1918); State v. Woolridge, 45 Or. 389, 78 P. 333 (1904).

■ Appellant assigns as error the trial court's refusal to give a portion of appellant's requested jury instruction No. 6[2] and his requested instruction No. 8,[3] dealing with contributory negligence. The trial court, in its memorandum decision, on denial of defendant's motion for judgment notwithstanding the verdict or in the alternative for a new trial, ruled that those requested instructions were incomplete in that they did not define contributory negligence, and made no attempt to explain the difference between the doctrines of contributory negligence and assumption of risk;[4] and secondly, that ordinary con-

---

1. I.C. § 1–205 relating to disposition of appeals, in part, provides: " * * * in giving a decision, if a new trial be granted, the court shall pass upon and determine all the questions of law involved in the case presented upon such appeal, and necessary to the final determination of the case."

2. "Instruction No. 6. In this action plaintiffs claim damages for personal injuries alleged to have been suffered by them while guests in the automobile of defendant, as a proximate result of the conduct of LeRoy Borden, which plaintiffs allege was intentional and the result of gross negligence.

    "Defendant denies that his conduct was intentional or was gross negligence * * * and further as an affirmative defense alleges that all risks involved in riding with defendant were the result of contributory negligence on the part of plaintiffs."

3. "Instruction No. 8. We have a legal principle commonly referred to as 'contributory negligence.' If you find from the evidence that plaintiffs were guilty of negligence which proximately contributed to cause the alleged injuries, then plaintiffs cannot recover."

4. "Instruction No. 15. A person is said to assume a risk when he freely, voluntarily and knowingly assents to dangerous conduct or to the creation or maintenance

of a dangerous condition, and voluntarily exposes himself to that danger, or when he knows that a danger exists in either the conduct or condition of another, or in the condition, use or operation of property, and voluntarily places himself, or remains, within the area of danger.

    "A person who thus assumed a risk is not entitled to recover for damages caused him without intention and which resulted from the dangerous condition or conduct to which he thus exposed himself."

    "Instruction No. 16. When upon entering a vehicle to accept a ride as a guest, a person knows that the one who is to operate the vehicle is intoxicated, the law holds that he assumes the hazard of his undertaking and, therefore, may not recover in the event of injury resulting from the driver's intoxication. The same effect under the law also follows when, after having entered a vehicle, a guest learns that the driver is intoxicated, and the guest having a reasonable opportunity to alight, fails to do so, thus voluntarily accepting the risks incident to the driver's intoxication."

    "Instruction No. 18. It should be noted that to bar recovery, assumption of risk must be voluntary. To be voluntary, these two factors must be present: First, the person in question must have actual knowledge of the danger. Second, he must have freedom of choice. This freedom of choice must come from cir-

tributory negligence is not a defense in an action based upon "gross negligence or reckless disregard."

Respondents asserted three grounds, i. e., gross negligence, intoxication and intentional acts on appellant's part as grounds for recovery, and the court instructed the jury on the same. Appellant interposed the affirmative defenses of contributory negligence and assumption of risk. The aforesaid grounds alleged by respondents for recovery are set forth in the guest statute, I.C. § 49–1401, which reads:

"Liability of motor owner to guest.— No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of the said owner or operator or caused by his intoxication or gross negligence."

We agree with the trial court that the requested instructions were incomplete in that they did not define contributory negligence.

■ Contributory negligence has been variously defined, although the basic idea of the definitions is the same. In Coulsen v. Aberdeen-Springfield Canal Co., 47 Idaho 619 at 633, 277 P. 542 at 547 (1929) appears the following definition:

"To constitute contributory negligence there must be a breach of the duty imposed by law upon persons to protect themselves from injury from the negligent act of another, and that such breach must concur with the negligence of the other in producing the injury complained of * * *."

In Williamson v. Neitzel, 45 Idaho 39, 45, 260 P. 689, 690 (1927) appears the following:

"A general definition of what constitutes contributory negligence is that it

cumstances that provide him a reasonable opportunity, without violating any legal or moral duty, to safely refuse to

is the doing, or the omitting to do, that which under the circumstances a reasonable man would not have done, or would not have omitted to do, to avoid any injury resulting to himself from the negligence of the defendant. * * *"

And Stowers v. Union Pac. R. Co., 72 Idaho 87, 97, 237 P.2d 1041, 1047 (1951) contains the following discussion:

"In determining the question of contributory negligence, due care or ordinary prudence under the circumstances is the only test. The presence or absence of contributory negligence must be adjudged by the conditions, circumstances and surroundings at the time of the accident and whether under such the person acted as a reasonably prudent person would have acted. * * *"

See also 65 C.J.S. Negligence § 116, relating to the subject matter of contributory negligence.

■ We also agree with the trial court that the requested jury instructions made no attempt to explain the relationship between contributory negligence and assumption of risk. In 65 C.J.S. Negligence § 117, is contained a discussion relating to contributory negligence and assumed risk, pointing out that they are distinct doctrines of the law and although they are closely associated, they are not synonymous. The following is taken from the text:

"* * * contributory negligence arises out of a tort, while assumption of risk arises out of an implied contract or the principle of the maxim, Volenti non fit injuria; that the essence of contributory negligence is carelessness, while the essence of assumption of risk is venturousness; * * *"

See Ferguson v. Jongsma, 10 Utah 2d 179, 350 P.2d 404 (1960); Matthews v. Cumberland & Alleghany Gas Co., 138 W.Va. 639, 77 S.E.2d 180 (1953); Fay v. Thrasher, 77 Ohio App. 179, 66 N.E.2d 236 (1946); Musser v. Los Angeles & S. L. R. Co.,

expose himself to the danger in question."

53 Nev. 304, 299 P. 1020 (1931). See also Anno. 82 A.L.R.2d 1218, Distinction between assumption of risk and contributory negligence, and particularly § 5—Substance of Distinction. See also Domingo v. Phillips, 87 Idaho 55, 390 P.2d 297 (1964), which holds that in this state the defense of assumption of risk is not limited to a master-servant or a contractual relationship.

▮ Appellant also contends that the court erred in refusing to amend jury Instruction No. 16 which defined the doctrine of assumption of risk, by adding the words "or in the exercise of reasonable care should know" after the word "knows." The record shows that appellant's counsel made the request orally at the time when the court afforded counsel opportunity to object to the proposed instructions. The proposed amendment to the jury instruction would have inserted into the instruction on assumption of risk an element of contributory negligence. Actual knowledge under the defense of contributory negligence is not a requirement. It is sufficient that the party, allegedly guilty of contributory negligence, "knew" or "in the exercise of reasonable care should have known" of the danger. See cases hereinbefore cited.

▮ However, the defense of assumption of risk presupposes actual knowledge of the danger. In Domingo v. Phillips, supra, the following rule is announced:

"For the defense of assumption of risk to be considered, a defendant must show that the plaintiff (or the decedent as in this action) knew the danger, understood and appreciated the risk therefrom and voluntarily exposed himself to such danger." 87 Idaho at 61, 390 P.2d at 300.

See also Deshazer v. Tompkins, 89 Idaho 347, 404 P.2d 604 (1965); Williams v. Collett, 80 Idaho 462, 332 P.2d 1032 (1958).

Appellant, by assignments of error, raises the issues whether contributory negligence may be asserted as a defense against gross negligence and intoxication.

The trial court was correct in its ruling that contributory negligence is not a defense against "reckless disregard;" see Smith v. Sharp, 85 Idaho 17, 375 P.2d 184 (1962) and Loomis v. Church, 76 Idaho 87, 277 P.2d 561 (1954), wherein this Court held that contributory negligence was not a defense against "reckless disregard of the rights of others" under the guest statute as it existed under the 1939 amendment.

The term "gross negligence," as contained in I.C. § 49–1401, as it presently reads by amendment S.L.1963, ch. 114, § 1, was substituted for the phrase "reckless disregard of the rights of others," as contained in such section of the statute as amended S.L. 1939, ch. 160, § 1. Thus far "gross negligence," as presently appearing in the statute, has not been defined by this Court.

▮ By the substitution of "gross negligence" for "reckless disregard of the rights of others" in the statute, we must assume that the legislature intended a change in the meaning of the two phrases. When a statute is amended, it is presumed that the legislature intended it to have a meaning different from that accorded to it before the amendment. Totorica v. Western Equipment Co., 88 Idaho 534, 401 P.2d 817 (1965); Hawkins v. Chandler, 88 Idaho 20, 396 P.2d 123 (1964); Pigg v. Brockman, 79 Idaho 233, 314 P.2d 609 (1957). Hence, it must be presumed that the legislature did not intend that the meaning of "gross negligence" should be the same as the meaning attributed to "reckless disregard of the rights of others."

In Foberg v. Harrison, 71 Idaho 11, 225 P.2d 69 (1950) the court had under consideration the guest statute, then I.C. § 49–1001, which contained the provision "reckless disregard of the rights of others." After discussing prior decisions, the court redefined the term "reckless disregard" as follows:

" * * * The term 'reckless disregard' as used in said section means an act or conduct destitute of heed or concern for consequences; especially foolishly heedless of danger, headlong rash; wanton disregard, or *conscious indifference to*

consequences." (Emphasis supplied) 71 Idaho at 16, 225 P.2d at 71.

This court followed the same definition in Turner v. Purdum, 77 Idaho 130, 289 P.2d 608 (1955); Mason v. Mootz, 73 Idaho 461, 253 P.2d 240 (1953); Riggs v. Roberts, 74 Idaho 473, 264 P.2d 698 (1953); and Loomis v. Church, supra. Mason v. Mootz, supra, however, recognized that in a guest case the burden is on the plaintiff to prove that the accident was caused by conduct on the part of the defendant amounting to reckless disregard and that proof of ordinary negligence is not sufficient in such a case. The court then said:

> "* * * It must be remembered that reckless disregard, within the meaning of the guest statute, requires proof of an absence of heed or concern for consequences, a heedlessness of danger, a 'wanton disregard, or conscious indifference to consequences.' *This implies a consciousness of danger and a willingness to assume the risk, or an indifference to consequences.*" (Emphasis supplied) 73 Idaho at 468, 253 P.2d at 243.

In Williamson v. McKenna, 223 Or. 366, 354 P.2d 56 (1960), the Oregon Supreme Court made an exhaustive analysis of the decisions of various jurisdictions which had interpreted the meaning of "gross negligence," "gross negligence or willful or wanton misconduct" and "reckless disregard." The analysis was in aid of the interpretation of the Oregon guest statute, O.R.S. 30.110 as to the meaning of "gross negligence." The court pointed to various Oregon decisions which held in effect that recklessness and gross negligence had been treated as synonymous; although it pointed to Turner v. McCready, 190 Or. 28, 222 P.2d 1010 (1950), which appeared to distinguish between "gross negligence" and "recklessness" where it was stated:

> "* * * it seems clear that under some circumstances the facts may present a jury question on the issue of gross negligence, although there is no *direct* evidence of a reckless state of mind manifested by warning given and ignored. * * * The

element of recklessness may, under some circumstances, be inferred from evidence of the driver's conduct in the light of conditions and of what he must have known. * * *" 190 Or. at 54, 222 P. 2d at 1021–1022.

In Williamson v. McKenna, supra, at the conclusion of its analysis, the Oregon Court concluded that "gross negligence" as used in O.R.S. 30.110 meant "reckless conduct." Again however, the Oregon Court in the Williamson case, as in Turner v. McCready, supra, recognized a distinction between "gross negligence" and "reckless disregard" in the following language:

> "* * * If it is assumed that gross negligence was intended to describe a type of conduct different from reckless conduct, there is still a basis upon which the two expressions could be reconciled. *'Reckless disregard* of the rights of others' *could be regarded as* the type of *conduct engaged in by the driver when he actually perceives the danger and continues his course of conduct. Gross negligence could then be considered as describing conduct of the driver when he does an act not knowing of the high degree of manifest danger but under* the circumstances *where he should have known.*" (Emphasis supplied) 223 Or. at 391, 354 P.2d at 67.

The foregoing is particularly apropos here and we endorse those distinctions between "reckless disregard" and "gross negligence" as applicable under our present guest statute I.C. § 49–1401, inasmuch as the legislature, by the substitution of the phrase "gross negligence" in the present section of the statute, for the phrase "reckless disregard of the rights of others" as theretofore provided, intended by "gross negligence" to describe a type of conduct different from reckless conduct or reckless disregard.

Reckless disregard includes gross negligence just as the greater includes the lesser. Gross negligence, however, need not include willfulness, or wanton or intentional disregard for the guest's safety, or conscious indifference to consequences; and there need not be an actual intent to inflict damage or

injury. Wood v. Musa, 168 So.2d 701 (Fla. App.1964); Burke v. Spear, 277 F.2d 1 (2nd Cir. 1960); Alspaugh v. Diggs, 195 Va. 1, 77 S.E.2d 362 (1953); Hart v. Kline, 61 Nev. 96, 116 P.2d 672 (1941); Mitchell v. Walters, 55 Wyo. 317, 100 P.2d 102 (1940).

In 60 C.J.S. Motor Vehicles § 399(4) b., we find definitions of "gross negligence", within the meaning of automobile guest statutes, inter alia, as follows:

> "In order to constitute 'gross negligence' within the meaning of an automobile guest statute, there must be more than ordinary negligence, for the two are distinguishable, the distinction being one of degree. 'Gross negligence' means just what it indicates, gross or great negligence, that is, negligence in a very high degree, * * *. However, except under some statutes where the term is used in connection with the phrase 'willful misconduct,' * * * gross negligence has been held not to include as an element wantonness, willfulness, or intentional disregard for the guest's safety; and there need not be any actual intent to inflict damage or injury."

Regarding contributory negligence as a defense to "gross negligence," in 65 C.J.S. Neligence § 131b., it is stated:

> "The rule that contributory negligence may bar recovery applies, even though the negligence for which the defendant is responsible is such as may properly be termed 'gross negligence.'"

The text points out that in the absence of a statutory provision to the contrary, "the rule that contributory negligence bars recovery applies, even though the negligence for which defendant is responsible is such as may properly be termed 'gross negligence.'" See also Clayton v. Bartoszewski, 198 A.2d 692 (Del.1964); Nass v. Mossner, 363 Mich. 128, 108 N.W.2d 881 (1961); Allin v. Snavely, 100 Cal.App.2d 411, 224 P.2d 113 (1950); Connole v. East St. Louis & S. Ry. Co., 340 Mo. 690, 102 S.W.2d 581 (1937). Where however, gross negligence is considered willful or wanton misconduct,

then contributory negligence is not a defense. Alabama Highway Express, Inc. v. Luster, 51 Tenn.App. 691, 371 S.W.2d 182 (1963); Field v. Gregory, 230 S.C. 39, 94 S.E.2d 15 (1956); Andelt v. Seward County, 157 Neb. 527, 60 N.W.2d 604 (1953); Graves v. Dachille, 328 Mich. 69, 43 N.W. 2d 64 (1950); Schubring v. Weggen, 234 Wis. 517, 291 N.W. 788 (1940); 60 C.J.S. Motor Vehicles § 399(4) d. Under Idaho's present guest statute, I.C. § 49–1401, in the light of the 1963 amendment thereto, gross negligence cannot be considered as synonymous with willful or wanton misconduct.

We therefore hold that the defense of contributory negligence may be asserted against alleged gross neglience, under Idaho's present guest statute, I.C. § 49–1401.

We also hold that the defense of contributory negligence may be asserted against alleged intoxication, under the present guest statute, I.C. § 49–1401. See Davis v. Nelson, 221 Cal.App.2d 62, 34 Cal.Rptr. 201 (1963); Fowler v. Franklin, 58 N.M. 254, 270 P.2d 389 (1954); Petersen v. Abrams, 188 Or. 518, 216 P.2d 664 (1950); United Brotherhood, etc. v. Salter, 114 Colo. 513, 167 P.2d 954 (1946); Anno. 44 A.L.R. 2d 1342, Automobile—Injuries to Guest—Defenses; 4 Blashfield's Cyclopedia of Automobile Law and Practice (Part 1), Section 2453 (Perm.Ed.1946); 61 C.J.S. Motor Vehicles § 492(a). In Frisvold v. Leahy, 15 Cal.App.2d 752, 60 P.2d 151 (1936), intoxication is described as "a specie of ordinary negligence superinduced by the excessive use of intoxicating liquors."

The record also shows that respondent Louise K. Hodge, a deaf-mute, went to sleep a short time prior to the accident, while riding as a guest in appellant's automobile.

As a general rule a guest passenger, whenever located in an automobile, must pay such attention to his own welfare as a reasonably prudent person would under like circumstances. Yearout v. Chicago, Milwaukee, St. Paul & Pacific R. Co., 82 Idaho 466, 354 P.2d 759 (1960); Ineas v. Union Pac. R. Co., 72 Idaho 390, 241

P.2d 1178 (1952); Curtis v. Curtis, 58 Idaho 76, 70 P.2d 369 (1937); Gorton v. Doty, 57 Idaho 792, 69 P.2d 136 (1937); Dillon v. Brooks, 51 Idaho 510, 6 P.2d 851 (1931). Under the attendant circumstances, the question whether respondent Mrs. Hodge, a guest, was guilty of contributory negligence in failing to exercise ordinary care for her own safety, was a question of fact for submission to the jury. Curtis v. Curtis, supra.

The facts of this case, i.e., that respondents were with appellant during most of the evening of October 19th and early morning of October 20, 1963; were present with appellant during the drinking; and accompanied appellant during the ride through the City of Boise, and onto the mountain road to the stopping point, and remained with appellant after the stop, were sufficient to raise the issue of contributory negligence. Moreover, while respondent Mrs. Hodge may not have known of, or appreciated, the danger, there was nevertheless, under the circumstances, a question of fact for the jury to determine—whether respondents acted as reasonably prudent persons would have acted under like circumstances. Zumwalt v. Lindland, 239 Or. 26, 396 P.2d 205 (1964); Scott v. Shairrick, 225 Ark. 59, 279 S.W.2d 39 (1952). See also Ford Motor Company v. Arguello, Wyo., 382 P.2d 886 (1963); Traverso v. Pupo, 51 Wash.2d 149, 316 P.2d 462 (1957); Fowler v. Franklin, supra; Shoemaker v. Floor, 117 Utah 434, 217 P.2d 382 (1950); United Brotherhood, etc. v. Salter, supra; Westergard v. Peterson, 117 Mont. 550, 159 P.2d 518 (1945).

We, therefore, hold that appellant was entitled to jury instructions, which the trial court refused, on contributory negligence.

A trial court is under the duty to instruct upon every reasonable theory of the litigants that is recognized by law as presenting a basis of a claim of relief or a defense thereto, where such theory finds support in the pleadings and the evidence. Domingo v. Phillips, supra; Wurm v. Pulice, 82 Idaho 359, 353 P.2d 1071 (1960); State ex rel. Rich v. Fonburg, 80 Idaho 269, 328 P.2d 60 (1958); Lemman v. McManus, 71 Idaho 467, 233 P.2d 410 (1951).

While the requested instructions perhaps did not adequately define contributory negligence and perhaps did not show adequate application of that doctrine to the case at bar, nevertheless since the request for such instruction was made, it became the duty of the trial court to give proper instructions thereon. I.R.C.P. 51. See Rino v. Statewide Plumbing & Heating Co., 74 Idaho 374, 262 P.2d 1003 (1953); Investors' Mortg. Sec. Co. v. Strauss & Co., 50 Idaho 562, 298 P. 678 (1931).

The discussions herein and views expressed dispose of appellant's further assignments of error relating to the trial court's denial of appellant's motions for involuntary dismissal, directed verdict, judgment notwithstanding the verdict and new trial.

The judgment is reversed and the cause remanded for a new trial.

Costs to appellant.

McFADDEN, C. J., and McQUADE, TAYLOR and SPEAR, JJ., concur.