532 F.2d 669
 Mildred J. HARMON, and Mildred J. Harmon, as Guardian Ad
Litem of Victoria Lynn Harmon, et al., Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
The FIRST NATIONAL BANK OF OREGON, as personal
representative of the Estate of Troy Eugene
Teague, Deceased, Cross-complainant-Appellant,
v.
UNITED STATES of America, Cross-defendant-Appellee.
 Nos. 74-1523 and 74-1524.
 United States Court of Appeals,
Ninth Circuit.
 Dec. 24, 1975.
 
 1
 Louis F. Racine, Jr. (argued), Racine, Huntley & Olson, Pocatello, Idaho, for plaintiffs-appellants in 74-1523.
 
 
 2
 Philip Barber (argued), Elam, Burke, Jeppesen, Evans & Boyd, Boise, Idaho, for cross-complainant-appellant in 74-1524.
 
 
 3
 Wilbur T. Nelson, Asst. U. S. Atty. (argued), Boise, Idaho, for defendant-appellee.
 
 OPINION
 
 4
 Before DUNIWAY and SNEED, Circuit Judges, and WEIGEL, District Judge.*
 
 WEIGEL, District Judge:
 
 5
 On June 25, 1970, Ellis Harmon and Troy Eugene Teague drowned in the Middle Fork of the Salmon River in Idaho. They were participating in a week-long white water rafting trip involving an outfitter and guide in charge, three volunteer crewmen, and six paying guests. Everett Spaulding was the outfitter and guide in charge. Harmon, a Los Angeles businessman, was one of the guests. He had no experience in white water boating. Teague, a resident of Oregon, was the volunteer crewman controlling the boat in which Harmon was a passenger. Teague was an experienced boater and had participated in several previous trips on the river.
 
 
 6
 Mildred J. Harmon, widow of Ellis Harmon, sued for wrongful death on behalf of herself and her minor children, naming as defendants the United States, Spaulding, and the First National Bank of Oregon (the Bank), the executor of Teague's estate. The Bank, on behalf of Teague, thereafter cross-complained against the United States. Both Mrs. Harmon and the Bank alleged that the United States Forest Service, an agency of the United States, was negligent in failing to warn of hazardous high water conditions prevailing at the time of the accident. Both sought relief under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2674 et seq. (1965). The District Court of Idaho found that both Harmon and Teague were contributorily negligent, and entered judgment for the United States on both the complaint and the counterclaim. We affirm.[1]
 
 
 7
 Both the Bank and Mrs. Harmon contended that the Forest Service had a duty to warn of the unusual condition of the Salmon River at the time of the trip, which started on June 21, 1970. The river, which flows through four National Forests managed by the United States Forest Service, has been designated by Congress as a "wild river" under the provisions of the Wild and Scenic Rivers Act, 16 U.S.C. § 1271 et seq. (1974), and is therefore required to be kept in its natural state. Its white water rapids make it popular for float trips such as that taken by Harmon and his friends. This popularity is encouraged by the Forest Service, which publishes brochures to inform the public of the recreational pleasures afforded by the river.
 
 
 8
 Because of the river's turbulence, there is always a danger that small boats, readily capsized in violent water, will overturn and that their passengers may drown. This danger is greatest during the period of high water which normally occurs in May and early June, the time of spring run-off of melted snow from the surrounding mountains. In late June of 1970, however, the river was extraordinarily high, due to the combination of a cold spell after the normal May run-off followed by an unusually warm period, starting about June 20th, which caused the snow to freeze and then to melt again. The river was still rising when the trip started on June 21st. It continued to rise and crested from June 21st to June 25th. The unusually high waters greatly increased the hazard for boaters during this four day period.
 
 
 9
 The trial court found its findings are not contested here that officials of the Forest Service were aware that the river was unusually high, although they did not know that it was still rising and was about to crest for a second time. The Forest Service had no policy of closing the river during periods of high water nor of warning of dangers created by high water conditions. Rather, the Service relied on the expertise of licensed guides such as Spaulding to keep boaters from harm. Appellants contend that this reliance was unjustified. They argue that the United States had a duty to warn of the additional hazards which the high waters created, or else a duty to close the river to boating until the waters subsided. In addition, they assert that, unlike the Forest Service, decedents did not have the requisite experience to recognize the danger and that, therefore, the court below erred in finding that decedents were contributorily negligent.
 
 
 10
 Duty to warn or to close the river.
 
 
 11
 Under the Federal Tort Claims Act, the law of Idaho governs the substantive legal principles in this case. 28 U.S.C. § 2674; see, e. g., Frazier v. United States, 412 F.2d 22 (6th Cir. 1969). The trial court correctly found that, under Idaho law, the United States did not have a duty to warn the members of the Spaulding party if they knew or, in the exercise of ordinary care, should have known of the dangers inherent in the condition of the river. Smith v. State, 93 Idaho 795, 473 P.2d 937 (1970); Otts v. Brough, 90 Idaho 124, 409 P.2d 95 (1965).[2]
 
 
 12
 The trial court found that the dangerous condition of the river was obvious to any person of ordinary intelligence. It found that Ellis Harmon in the exercise of reasonable care should have recognized the danger, and that Teague, who was an experienced boater, did recognize it.
 
 
 13
 There is ample evidence to support these findings. All members of the party wore life jackets on the river because of the constant risk of capsizing. All observed that the river was extremely high. Between the time the trip started on June 21st and the day of the accident on June 25th, all had participated in "lining" the boats down the river. This was a process by which the boats were floated through dangerous rapids by means of ropes attached to the boats and controlled from the shore. At the commencement of the trip, the entire party discussed the fact that lining was necessary because the turbulence of the water created a high risk of capsizing. In fact, just before the accident, Teague, along with Harmon, had lined his boat down the upper portion of the rapids where the accident occurred. Thus, since both Teague and Harmon knew or should have known of the danger, the United States had no duty to warn.[3]
 
 
 14
 The trial court also found that the guests in the party, including Harmon, were "either unaware or not apprehensive of the potential hazard created by the high flow of the river." But this finding does not conflict with the conclusion that Harmon should have known of the danger. The trial court accounted for Harmon's lack of knowledge or apprehension by the fact that he "enjoyed the thrill of passage through the white water rapids." In other words, Harmon's eagerness for that thrill either caused him carelessly to disregard the danger or intentionally to face it.
 
 
 15
 Appellants' argument that the United States had a duty to close the river in order to "make it safe" until the waters had subsided is incorrect. The duty of a landowner to make premises safe is not absolute, even to an invitee. Rather, the landowner must act reasonably, either by giving an adequate warning or by eliminating the hazard. Restatement 2d of Torts § 343; Smith v. State, supra. If there was no duty to warn, there was clearly no duty to close the river to boating.[4]
 
 
 16
 Contributory negligence.
 
 
 17
 The trial court found that decedents were contributorily negligent.[5] Under Idaho law, it is enough for contributory negligence that a person should have known of a danger and failed to exercise ordinary care to avoid it. Hodge v. Borden, 91 Idaho 125, 417 P.2d 75 (1966). The issue of whether decedents were contributorily negligent, like the issue of whether the United States was primarily negligent in failing to warn, depends on whether, as reasonable men, they should have recognized the risks ensuing from boating in high water conditions. Since we cannot hold that the court below was erroneous in its conclusion that Teague knew[6] and Harmon should have known of the danger, appellants are barred from recovery by decedents' contributory negligence.[7]
 
 
 18
 The judgments of the district court are affirmed.
 
 
 
 *
 Honorable Stanley A. Weigel, United States District Judge, Northern District of California, sitting by designation
 
 
 [1]
 Mrs. Harmon settled her claims against Spaulding and the Bank prior to trial. Only her claim against the United States and that of the Bank as Teague's representative are before us
 
 
 [2]
 Under Idaho law, this standard applies even if Harmon and Teague are viewed as invitees. Smith v. State, supra
 
 
 [3]
 Compare Restatement 2d of Torts § 343 and § 343A, comments e, f (1965)
 
 
 [4]
 Appellants' argument that the United States should be held liable under the doctrine of last clear chance is also without merit. In a case such as this, involving an "inattentive plaintiff", the doctrine only applies when the defendant realizes or has reason to realize that plaintiff is unlikely to discover his peril in time to avoid the harm. Restatement 2d of Torts § 480. The trial court found that decedents, as reasonable men, should have recognized the danger of capsizing from their observance of the river. The Forest Service officials had no reason to reach a different conclusion, and, in addition, had no practical means of communicating with the party after the morning of June 24th. They thus did not have a last clear chance to prevent the accident, either at the commencement of the trip or before the party negotiated Redside Rapids on June 25th
 
 
 [5]
 Logically, since there was no duty to warn, and therefore no primary negligence, there was no need to reach the defense of contributory negligence. However, we view the trial court's holding as to contributory negligence as an alternative ground on which to affirm
 
 
 [6]
 Appellant Bank argues that Finding 20 of the court below is not supported by the evidence. This finding concerns the events immediately preceding the accident. The court found that, having lined his boat through the upper portion of the rapids, Teague ignored a signal from Spaulding and proceeded to go through the next set of rapids, where the boat capsized. The Bank maintains that Teague was attempting to cross over above the rapids in accordance with Spaulding's signal when his boat was swept into the rapids by the current. There is sufficient evidence in Spaulding's testimony and in that of guests Karp and Gold to support the trial court. Moreover, even if the Bank were correct, Teague would still be barred from recovery since he recognized the dangerous condition of the river and was willing to expose himself to that danger
 
 
 [7]
 Under the law of Idaho prevailing at the time of the accident, contributory negligence was a complete bar to recovery. Sulik v. Central Valley Farms, Inc., 95 Idaho 826, 521 P.2d 144 (1974). A year after the accident occurred, the Idaho legislature abolished contributory negligence and instituted comparative negligence. S.L.1971, ch. 186 § 1, Idaho Gen.Laws Ann. § 6-801 (Supp.1974)